# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Wilson v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121509**

---

| | |
|---|---|
| Appellate Court Caption | CHRIS WILSON, Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Division of Banking of Department of Financial and Professional Regulation, and MANUEL FLORES, Director of the Division of Banking of the Department of Financial and Professional Regulation, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1509 |
| Filed | May 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A 2009 amendment to the Residential Mortgage License Act providing that licenses "shall not" be issued to anyone convicted at any time of a felony involving fraud or dishonesty was properly applied to plaintiff in denying his 2010 license renewal application because of his 2006 federal tax fraud conviction, notwithstanding his contention that application of the amendment is an *ex post facto* law that violated his constitutional rights, took a property interest without just compensation and violated the *res judicata* doctrine, since the amendment is not a penalty, but, rather, its intention is to protect consumers from unethical mortgage practices, it does not violate the prohibition against *ex post facto* laws, no property interest was affected by the denial of plaintiff's application, and *res judicata* did not apply because the orders involved responded to different issues. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-19462; the Hon. Thomas R. Allen, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | William C. Coughlin, of Law Offices of William C. Coughlin, P.C., of Worth, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellees. |
| | |
| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion. |
| | Justices Howse and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1     The issue in this appeal is whether a residential mortgage loan originator who was disciplined by the State of Illinois in 2007 for federal tax fraud convictions and then relicensed at the State's discretion in 2007, 2008, and 2009 became permanently disqualified from relicensing by a 2009 amendment to the Residential Mortgage License Act of 1987 (205 ILCS 635/7-3 (West 2010)) (Mortgage License Act) which indicates licenses "shall not" be issued to anyone convicted at any time of a felony involving fraud or dishonesty. Petitioner Christopher Mark Wilson contends the denial of his 2010 license renewal application by respondent Illinois Department of Financial and Professional Regulation (Department) due to his federal tax fraud convictions violates his state and federal constitutional rights because the 2009 law is being applied retroactively; is an *ex post facto* law; and has taken a property interest without just compensation. He also contends he is being punished a second time for the same conduct in violation of the doctrine of *res judicata*.

¶ 2     The relevant facts are straightforward and undisputed. Wilson, a resident of Lombard, Illinois, was first issued a residential mortgage loan originator license by the State of Illinois in 2005. The Mortgage License Act defines a "loan originator" as "any natural person who, for compensation or in the expectation of compensation, either directly or indirectly makes, offers to make, solicits, places, or negotiates a residential mortgage loan" and further specifies that no person "shall engage in the business of *** originating *** residential mortgage loans without first obtaining a license." 205 ILCS 635/1-4(hh) (West 2010) (statute defining terms used in Mortgage License Act); 205 ILCS 635/1-3(a) (West 2010) (statute stating scope of Mortgage License Act and necessity of license). Wilson renewed the license without incident for the year 2006–the same year in which he entered a guilty plea in the

United States District Court for the Northern District of Illinois and was convicted of the federal felony crimes of tax fraud in 2001 and impeding the Internal Revenue Service. See 26 U.S.C. § 7206(1) (2000) (statute regarding fraud and false statements); 26 U.S.C. § 7212(a) (2000) (statute regarding obstruction of administration of internal revenue laws). Wilson was ordered to pay restitution for taxes owed and a $1,500 fine and put on two years' probation. He indicates the tax arrearage was $43,000, but the addition of interest and penalties increased his debt to $107,000. He also indicates he fully complied with the sentence.

¶ 3 Wilson disclosed the federal convictions when he applied for license renewal in 2007. He and the Department then agreed to disciplinary consequences that were documented in a consent order. The consent order indicates the convictions were potential grounds for denying renewal, but Wilson's annual license would be renewed and then immediately suspended for 30 days and he would be subject to probation for 2 years. See 205 ILCS 635/7-1 (West 2006) (statute indicating loan originators must be registered and authorizing the creation of rules and regulations prescribing relevant qualifications, fees, examinations, education, supervision, enforcement, and other criteria); 38 Ill. Adm. Code 1050.2110(a)(6) (2005) (administrative rule indicating applicants must disclose any criminal conviction or adverse civil judgment involving monies, breach of trust, moral turpitude, or misfeasance or malfeasance). Wilson complied with the terms of probation and his license was renewed for the years 2008 and 2009.

¶ 4 Around this same time, however, federal and state laws were enacted to combat extensive fraud and predatory lending practices in the subprime residential mortgage market. A new federal law known as the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 or "SAFE Act" imposed background and education standards and required fingerprinting and issuance of unique, lifetime identifiers to prevent unscrupulous mortgage loan originators from simply moving from jurisdiction to jurisdiction. 12 U.S.C. §§ 5101-5116 (Supp. III 2010); Bryce Gray, *The Secure and Fair Enforcement for Mortgage Licensing Act of 2008*, 31 Rev. Banking & Fin. L. 51 (2011). Among the SAFE Act's "minimum standards for licensing and registration" for mortgage loan originators was that:

> "[t]he applicant has not been convicted of, or pled guilty or nolo contendre to, a felony in a domestic, foreign, or military court:
>
> > (A) during the 7-year period preceding the date of the application for licensing and registration; or
> >
> > (B) at any time preceding such date of application, if such felony involved an act of fraud, dishonesty, or a breach of trust, or money laundering." 12 U.S.C. § 5104(b) (Supp. III 2010).

Consistent with the SAFE Act, Illinois law was amended effective July 31, 2009, to preclude the Department from issuing a mortgage loan originator license unless:

> "[t]he applicant has not been convicted of, or pled guilty or nolo contendre to, a felony in a domestic, foreign, or military court:
>
> > (A) during the 7-year period preceding the date of the application for licensing and registration; or

(B) at any time preceding such date of application, if such felony involved an act of fraud, dishonesty, or a breach of trust, or money laundering[.]" Pub. Act 96-112, § 5 (eff. July 31, 2009) (adding 205 ILCS 635/7-3(2)).

¶ 5 On June 18, 2010, the Department notified Wilson by mail of its determination that the new law rendered him ineligible for licensing and that the Department would no longer renew his annual registration. In the Department's opinion, both aspects of the statute were implicated in that Wilson's 2006 felony convictions were less than seven years old and they involved fraud or dishonesty. Accordingly, when Wilson applied for renewal in 2010, the Department denied his application. He appealed the decision to an administrative law judge who conducted a one-day hearing in 2011. At the hearing, Wilson argued that he otherwise met all requirements for license renewal and that the Department's decision violated various constitutional rights. The hearing officer noted but declined to rule on Wilson's constitutional arguments, because the officer considered arguments of that nature to be reserved for the courts. The hearing officer observed that the facts were not in dispute and that "[t]he gist of the disagreement between the parties is their different views concerning the effect of a recent change in the law." The officer concluded the Department had proven that the Mortgage License Act required nonrenewal of Wilson's registration. The officer forwarded his recommendation to the Director of the Division of Banking, who entered a final order directing the Department to adhere to its decision of non-renewal.

¶ 6 Wilson filed a three-count complaint in the circuit court of Cook County, seeking administrative review based on his constitutional claims, a declaratory judgment based on his constitutional claims, and an injunction and damage award based on section 1983 of the federal Civil Rights Act. 42 U.S.C. § 1983 (Supp. I 2008) (statute providing for award of damages, as opposed to typical award of specific performance, to those whose constitutional rights have been violated by someone acting under state authority). After briefing and oral arguments, the court denied Wilson's administrative review arguments and "in light of the court's ruling," dismissed his other claims.

¶ 7 We are reviewing the decision of the agency rather than the decision of the circuit court (*Zander v. Adams*, 399 Ill. App. 3d 290, 293, 928 N.E.2d 492, 495 (2010); *White v. Department of Employment Security*, 376 Ill. App. 3d 668, 671, 875 N.E.2d 1154, 1157 (2007)), and we will apply the *de novo* standard to Wilson's arguments (*Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20, 975 N.E.2d 153 (constitutionality of statute addressed *de novo*); *Currie v. Wisconsin Central, Ltd.*, 2011 IL App (1st) 103095, 961 N.E.2d 296 (relevance of *res judicata* addressed *de novo*); *Zander*, 399 Ill. App. 3d at 293, 928 N.E.2d at 495 (questions of law are subject to *de novo* review).

¶ 8 On appeal, Wilson argues that the felony-conviction provision does not apply to him and is constitutionally infirm. More specifically, he first contends the law speaks only to the "issuance" of a new mortgage originator license and not to a "renewal," and thus the fact that he held a license prior to the 2009 legislation prevents the Department from denying his request for renewal. He emphasizes the subtitle of the statute, "*Issuance* of license," and its first sentence, "The Director shall not *issue* a mortgage loan originator license unless the Director makes [certain findings about the applicant, such as the lack of a felony conviction involving fraud or dishonesty]." (Emphases added.) 205 ILCS 635/7-3 (West 2010). Wilson

-4-

contends these are indications that the law is applicable only to first-time licenses and not their renewals. We could find this argument has been waived, because it is made only in passing, without citation to relevant authority or full discussion and analysis, but we choose to address it. We do not find any merit in this argument. This is the only statute that provides for licensing in this profession. It does not distinguish between the first "issuance" and any subsequent "issuance" of a mortgage loan originators license. Furthermore, section 7-6 of the Mortgage License Act, which contains the "minimum standards for license renewal for mortgage loan originators," mandates that each person "continues to meet the minimum standards for license issuance under Section 7-3," satisfies the annual continuing education requirements set out in section 7-7, and pays a renewal fee. 205 ILCS 635/7-6 (West 2010). Thus, section 7-3 governs all mortgage loan originators, whether they be novice, first-time license applicants; experienced professionals who have relocated and apply for their first licensing in Illinois; or experienced Illinois renewals, like Wilson. In section 7-3, the General Assembly imposed strict character and fitness standards on all Illinois mortgage loan originators. Furthermore, Congress would have had no reason to limit the new felony-conviction provision to first-time applicants rather than all individuals wanting to practice as mortgage loan originators in this country. Congress acted in 2008 in response to what was perceived to be widespread irresponsible, unethical, and incompetent conduct in the subprime mortgage market, which are not behaviors attributable to inexperience. In addition, the stated purpose of the Mortgage License Act is to protect Illinois consumers and stabilize the economy by "governing the business practices of residential mortgage lenders and their agents," rather than governing only the *inexperienced* practitioners in this field. 205 ILCS 635/1-2(b) (West 2010). The General Assembly specified:

> "The activities of lenders and their offerings of financing for residential real property have a direct and immediate impact upon the housing industry, the neighborhoods and communities of this State, its homeowners and potential homeowners. The General Assembly finds that it is essential for the protection of the citizens of this State and the stability of the State's economy that reasonable standards governing the business practices of residential mortgage lenders and their agents be imposed. The General Assembly further finds that the obligations of lenders and their agents to consumers in connection with making, soliciting, processing, placing or negotiating of residential mortgage loans are such as to warrant the uniform regulation of the residential mortgage lending process, including the application, solicitation, making and servicing of residential mortgage loans. The purpose of this Act is to protect Illinois consumers seeking residential mortgage loans and to ensure that the residential mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices. The purpose of this Act is to regulate residential mortgage to benefit our citizens ***." 205 ILCS 635/1-2(b) (West 2010).

To accomplish this statutory purpose, the enacted standards not only preclude felons from practicing in the mortgage origination field, but also require applicants to demonstrate "character, and general fitness so as to command the confidence of the community" and provide a basis for the Department to determine that the person "will operate honestly, fairly, and efficiently." 205 ILCS 635/7-3(3) (West 2010). One may demonstrate his or her personal

financial responsibility by maintaining a clean credit report and a civil record free of outstanding judgments, tax liens, educational loan defaults, nonpayment of child support, and foreclosures. 205 ILCS 635/7-3(3) (West 2010). Given the purpose of the Mortgage License Act, it would have been inappropriate to impose these standards on some licensees but not others.

¶ 9     Wilson also argues, however, that the felony-conviction provision should "not be given retroactive application" because it "attach[es] new, drastic legal consequences to events completed before it's [*sic*] enactment" in violation of Wilson's right to substantive due process. Our analysis of this constitutional argument relies heavily on *Consiglio*, a recent First District opinion that rejected the argument Wilson now raises. *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142. That case concerned the constitutionality of a new law that revoked the licenses of health care workers who had previous convictions for battering patients.

¶ 10    Dr. Mohammed Kalleluddin was a physician who was convicted of four counts of misdemeanor battery upon female patients in 2000, his medical license was suspended for two years, and when it was restored, he was subject to indefinite probation; however, after an administrative hearing, the Department terminated the probation in 2007 and restored his medical license without any encumbrance. *Consiglio*, 2013 IL App (1st) 121142, ¶ 3. The law at issue in *Consiglio* took effect about four years later on August 20, 2011. *Consiglio*, 2013 IL App (1st) 121142, ¶ 1. Dr. Nercy Jafari was a physician convicted in 2001 of misdemeanor criminal sexual abuse of misconduct involving a female patient, he was sentenced to two years' probation and required to register as a sex offender for 10 years, the Department determined his medical license did not need to be suspended or limited in any way, and four days after his duty to register as a sex offender expired, the new law took effect. *Consiglio*, 2013 IL App (1st) 121142, ¶ 4. Dr. Angelo Consiglio was a physician who pled guilty to misdemeanor battery upon a female patient in his medical office in 2004, his license was suspended for about a year and a half and then subject to indefinite probation, but in 2006, the Department fully restored his license to practice, unencumbered. *Consiglio*, 2013 IL App (1st) 121142, ¶ 5. The fourth health care worker was Dr. Heroshi Hayashi, a chiropractor convicted in 2007 of misdemeanor battery for inappropriately touching a female patient, and in 2008 the Department disciplined him by suspending his license for 30 days and putting him on 3 years' probation. *Consiglio*, 2013 IL App (1st) 121142, ¶ 6.

¶ 11    Once the new law took effect in 2011, the Department permanently revoked the four health care worker licenses without hearing, pursuant to the plain terms of the law, based on the prior convictions. *Consiglio*, 2013 IL App (1st) 121142, ¶¶ 6-7. The doctors argued in part that the new law operated retroactively in a way that violated their constitutional rights to substantive due process. *Consiglio*, 2013 IL App (1st) 121142, ¶ 10. The court responded that the law was not retroactively applied:

    "The fact that application of the [statute's] mandatory revocation provisions may depend upon criminal acts which predate its effective date does not necessarily render it retroactive in nature. [Citations.]

        Indeed, although the [statute] may draw upon antecedent convictions for its

operation, it does not impose new legal consequences to the plaintiffs' convictions or their right to practice medicine in the years after their convictions and prior to its effective date. 'Rather, the statute looks prospectively at [their] right to continue practicing medicine in the future.' *Bhalerao v. Illinois Department of Financial & Professional Regulations*, 834 F. Supp. 2d 775, 783 (N.D. Ill. 2011). As the court held in *Bhalerao*, the [statute] creates a present and future effect on present and future conduct, and has no effect on the plaintiffs' rights to practice medicine in the past. *Id*. at 783–84; [citation]; *United States v. Leach*, 639 F.3d 769, 773 (2011) (finding new Sex Offender Registry and Notification Act was not retroactive merely because it applied to convictions that predated its enactment; rather, the law created 'new, prospective legal obligations based on the person's prior history'). In sum, the [statute] affects only the plaintiffs' rights to practice as health care workers subsequent to its enactment, and it is not retroactive in a manner that triggers the substantive due process protections described in [case law]." *Consiglio*, 2013 IL App (1st) 121142, ¶¶ 15-16.

¶ 12    Similarly, here, the fact that the Mortgage License Act draws upon antecedent facts or upsets Wilson's expectations based in prior law does not necessarily mean the Mortgage License Act is retroactive. The Mortgage License Act does not impose new legal consequences to his tax fraud convictions or affect his ability to practice in the mortgage loan origination field after his 2006 convictions and prior to the legislation's effective date in mid 2009. It does not call into question his previous work as a mortgage loan originator. Rather, the Mortgage License Act affects only Wilson's right to practice his chosen profession in the present and in the future. Based on an antecedent event–his felony crime convictions in 2006–the Mortgage License Act restricts his present and future participation in the mortgage loan market. It affects his rights subsequent to the law's effective date in 2009 and is not retroactive in the true sense of that term.

¶ 13    Wilson next argues that, as applied, the felony-conviction provision is an *ex post facto* law prohibited by article I, section 9, of the United States Constitution (U.S. Const., art. I, § 9) and article I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. I, § 16) because in 2009 it increases the punishment for his 2006 guilty pleas to the federal felony charges. The prohibition on *ex post facto* or retroactive laws "restrains Congress and state legislatures from enacting arbitrary or vindictive legislation" and "assures that statutes give fair warning" and that individuals may "rely on their meaning until explicitly changed." *Fletcher v. Williams*, 179 Ill. 2d 225, 229-30, 688 N.E.2d 635, 638 (1997). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; [their] settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).

¶ 14    "While the constitutional prohibition against *ex post facto* laws generally applies only to penal statutes [citation], it has been applied to civil statutes which can fairly be characterized as punitive [citation]." *Consiglio*, 2013 IL App (1st) 121142, ¶ 32. In other words, as a general rule, the prohibition on *ex post facto* laws is about criminal statutes. *Consiglio*, 2013 IL App (1st) 121142, ¶ 32; *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (regarding law providing for involuntary civil commitment of sexually violent predator); *Landgraf*, 511 U.S. at 266 (regarding law providing for damages for intentional discrimination). The Mortgage

License Act is plainly a civil statute. It is part of the "Financial Regulation" chapter of Illinois law, rather than part of its Criminal Code of 1961 (720 ILCS 5/1-1 *et seq.* (West 2010)) and the statute is administered by the Department (205 ILCS 635/4-1(k) (West 2010)) rather than the State's Attorney, who is responsible for enforcing the state's criminal laws (55 ILCS 5/3-9005 (West 2010)). These are indications Illinois' legislators did not view the statute as a punitive law. Ultimately, though, whether the civil sanction of denial of a state license renewal may be fairly characterized as punitive, and therefore, as an *ex post facto* law, is determined by considering the same seven factors used in a double jeopardy analysis. *Consiglio*, 2013 IL App (1st) 121142, ¶ 33 (citing *Smith v. Doe*, 538 U.S. 84, 97 (2003) (applying same seven *Kennedy* factors used in double jeopardy analysis to *ex post facto* analysis)). No single factor is considered dispositive. *Smith*, 538 U.S. at 97.

¶ 15    "Under the first factor, a statute imposes an affirmative disability or restraint [on a person's movement or activities] when *** [the sanction it imposes] smacks of the infamous punishment of imprisonment." *Consiglio*, 2013 IL App (1st) 121142, ¶ 26. In our opinion, the Mortgage License Act as applied to Wilson imposes serious consequences, but the statute does not have a punitive effect. Although it keeps him from engaging in his chosen profession, he is free to pursue another occupation that does not require a mortgage loan originator license. The inability to renew this particular type of license is not equivalent to imprisonment. Moreover, the stated and obvious intent of the Mortgage License Act is to protect consumers and restore confidence and stability in the economy and it was not enacted as additional punishment for Wilson's past criminal conduct.

¶ 16    Second, license revocation historically has not been regarded as a form of punishment. *Consiglio*, 2013 IL App (1st) 121142, ¶ 22 (indicating revocation of a voluntarily granted privilege, like a license, has not been regarded as punishment); *Hudson v United States*, 522 U.S. 93, 104 (1997) (indicating punitive fines and debarment of bank chairman were not sufficiently punitive that subsequent criminal prosecution for the same violations was contrary to double jeopardy clause, even where the purpose of the civil sanctions was punishment of the offender and deterrence of others); *People v. Lavariega*, 175 Ill. 2d 153, 156-57, 676 N.E.2d 643, 644-45 (1997) (determining that summary suspension of defendant's driver's license for refusing or failing to complete blood-alcohol test did not constitute punishment for double jeopardy purposes and therefore did not preclude prosecution for driving under the influence). "Instead, changing the requirements for licensure in Illinois has historically been viewed as a civil determination for the protection of the public, rather than as a criminal penalty." *Bhalerao*, 834 F. Supp. 2d at 789. Again, the apparent intent of the Mortgage License Act is to protect consumers and restore confidence and stability in the mortgage marketplace and the new law does not punish Wilson.

¶ 17    Third, the felony-conviction provision does not contain a *scienter* requirement–it states only that an individual may not retain a mortgage loan originator license if that individual has been convicted of certain crimes. 205 ILCS 635/7-3(2) (West 2010). However, because the underlying fraud conviction would require proof of *scienter* (or a guilty plea such as Wilson's), this third factor indicates that Mortgage License Act is punitive. *Consiglio*, 2013 IL App (1st) 121142, ¶ 26. *Cf. People v. Malchow*, 193 Ill. 2d 413, 422, 739 N.E.2d 432, 440

-8-

(2000) (where the supreme court examined the disputed sex offender notification statute rather than the underlying criminal act to determine whether the law included a *scienter* requirement).

¶ 18     Fourth, even if the felony-conviction provision may act as retribution or deterrence to some, it is not very effective at accomplishing these traditional goals of criminal punishment. It accomplishes very little toward these goals because when the felony-conviction provision was enacted in 2009, mortgage loan originator licenses were already subject to possible revocation for criminal convictions and the change from discretionary revocation to mandatory revocation is unlikely to add to the deterrent effect of the existing law. *Consiglio*, 2013 IL App (1st) 121142, ¶ 27; see *Malchow*, 193 Ill. 2d at 423, 739 N.E.2d at 440 (indicating that civil statutes frequently have some deterrent effect, but that alone does not make them punitive statutes); *Hudson*, 522 U.S. at 104 (same). Thus, the fourth factor does not indicate the Mortgage License Act has a punitive effect.

¶ 19     However, the fifth relevant factor weighs in Wilson's favor, and is conceded by the Department, because the felony conviction provision applies to behavior that is already criminal. *Consiglio*, 2013 IL App (1st) 121142, ¶ 28.

¶ 20     Sixth, the statute has another purpose besides punishment, in that it is intended to restore consumer confidence and protect them from predatory and unethical mortgage lending practices. *Consiglio*, 2013 IL App (1st) 121142, ¶ 28.

¶ 21     And, finally, we look to whether the sanction is excessive in proportion to the statute's non-punitive purpose, and conclude that although Wilson apparently practiced in the mortgage loan origination field in 2006, 2007, 2008, and 2009, without any reported incident, his removal from the field is consistent with the overall purpose of the felony-conviction provision of restoring the confidence of the community. *Consiglio*, 2013 IL App (1st) 121142, ¶ 29.

¶ 22     Taken together, the seven factors do not weigh in favor of concluding that the statute has a punitive effect sufficient to overcome its lack of punitive intent. Accordingly, we hold that it does not violate the proscription on *ex post facto* laws.

¶ 23     We also reject Wilson's contention that the denial of his application for license renewal is a violation of his constitutional rights because it amounts to a taking for which he did not receive just compensation. The fifth amendment of the United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998) (indicating that interest accruing on attorney trust accounts were private property within the meaning of the constitution's takings clause); *Canel v. Topinka*, 212 Ill. 2d 311, 818 N.E.2d 311 (2004) (same with respect to dividends and interest accruing on unclaimed property presumed to be abandoned and placed in the state's custody for safekeeping). Wilson's argument fails immediately because he did not have a protected property interest with the meaning of the takings clause in a mortgage originator license because he did not have a vested right to receipt of that license. See *John v. Department of Professional Regulation*, 305 Ill. App. 3d 964, 970, 713 N.E.2d 673, 677-78 (1999) (indicating that vested rights are protected from legislative interference, Illinois registered nursing license was not a vested right, legislature

could amend license requirements); *Wineblad v. Department of Registration & Education*, 161 Ill. App. 3d 827, 515 N.E.2d 705 (1987) (indicating legislature could amend physician assistant license requirements after licenses were issued). Wilson had no right to demand retention or renewal of that license and at all times, the Department had the authority to revoke, suspend, or refuse to renew the license. Because no vested right was affected, no property interest was affected and the takings clause was not implicated by the Department's decision.

¶ 24     Finally, Wilson contends that once he was disciplined by the Department in 2007 due to his guilty pleas to the federal crimes, the Department could not revoke his license due to his guilty pleas to the federal crimes. Here, we again take guidance from *Consiglio*'s analysis regarding the new law requiring revocation of a health care provider license where the licensee has been convicted of a sex crime:

> "At the time the Department entered its original orders punishing the plaintiffs, Illinois law did not require that their licenses be revoked under the circumstances presented here. Now, license revocation is mandated by the Act. Accordingly, the Department's original orders reflected the Department's determination as to whether license revocation was warranted, while the Department's current orders reflect its administration of a law requiring revocation. The two orders respond to different issues, and they were issued pursuant to different statutes. For these reasons, *res judicata* does not apply." *Consiglio*, 2013 IL App (1st) 121142, ¶ 45.

Based on this reasoning, we reject Wilson's contention that the Department's prior disciplinary measure precludes the Department from applying the new felony-conviction provision to him. The 2007 and 2010 orders respond to different issues. The 2007 order does not trigger *res judicata*.

¶ 25     The decision of the Department refusing to renew Wilson's mortgage originator license in 2010 is affirmed.

¶ 26     Affirmed.