# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Vali Mohammad v. Department of Financial & Professional Regulation,**
**2013 IL App (1st) 122151**

---

| | |
|---|---|
| Appellate Court Caption | MOHAMMAD VALI MOHAMMAD, Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; BRENT E. ADAMS, as SECRETARY OF THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, and JORGE SOLIS, as DIRECTOR OF THE DIVISION OF BANKING OF THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2151 |
| Filed | June 14, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The 2009 amendment of the Residential Mortgage License Act providing that anyone with a felony conviction for a crime involving "fraud" is ineligible for a mortgage loan originator license applied to plaintiff and barred him from renewing his license because of his 2000 conviction for mail fraud, notwithstanding the fact that he had satisfied the discipline imposed and renewed his license until his application in 2010, since the law was not a retroactive change, the language is unambiguous, and despite the harshness of the result, the consequences can be avoided only by a change in the law, not judicial construction. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-11663; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | David S. Rodriguez, of Chicago, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellees. |

| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion. |
| | Justices Howse and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff Mohammad Vali Mohammad was a registered mortgage loan originator with defendant Illinois Department of Financial and Professional Regulation (Department) when he applied for license renewal and disclosed that he had been convicted of mail fraud in 2000.[1] The Department disciplined Vali Mohammad by suspending his license for 120 days, fining him $1,000, and placing him on two years' probation; however, Vali Mohammad completed the discipline without incident and the Department renewed his annual license in 2007, 2008, and 2009. At issue here is the Department's denial of Vali Mohammad's 2010 application for renewal based on a 2009 amendment to the Residential Mortgage License Act of 1987 (205 ILCS 635/7-3 (West 2010)) (Mortgage License Act), which indicates individuals with felony convictions for crimes involving "fraud" are ineligible for mortgage loan originator licensing. Vali Mohammad challenged the Department's denial in an administrative proceeding, arguing in part that his state and federal constitutional rights were being violated, but he was unsuccessful in that proceeding as well as in an administrative review action in the circuit court of Cook County. He appeals, contending the 2009 law should not be applied retroactively.

¶ 2      The record indicates that Vali Mohammad immigrated to the United States in 1971 and found work as a janitor at a plastic injection molding company in Des Plaines, Illinois, but by 1978 had progressed to supervising 15 people in production at the manufacturing facility. Between 1980 and 1995, he advanced from foreman to vice president of operations of a similar company in Buffalo Grove, Illinois, named Courtesy Corporation/Med-Tek. He left Courtesy Corporation/Med-Tek in part because his 10% ownership in the company meant

---

[1] Plaintiff's name is spelled as either "Valimohammad" or "Vali Mohammad" at various points in the record on appeal. It is also unclear from the record whether his conviction disclosure was in 2005 or 2006; the consent order is numbered "2005-917" but was executed by Vali Mohammad on December 5, 2006, and by the Department on December 12, 2006.

he worked a lot of overtime hours and was at the facility as many as six or seven days a week and in part because he did not feel that his contribution was appreciated. He moved on and became plant manager of an injection molder known as Stepco Corporation that had facilities in Arlington Heights and Streamwood, Illinois. During his career in the plastic molding field, Vali Mohammad was credited in industry publications for aggressively modernizing production and reducing waste.

¶ 3    During the last 5 years of his 15-year employment at Courtesy Corporation/Med-Tek, Vali Mohammad and two of the company's primary owners sold the company's plastic waste for personal profit instead of allowing it to be sent to a landfill. This sideline ended badly for Vali Mohammad. He indicates that a third major partner at Courtesy Corporation/Med-Tek was angered by his departure for the Stepco job, sued him for diverting the company's assets, and made as many as 40 complaints to federal authorities until they charged Vali Mohammad with one count of mail fraud pursuant to 18 U.S.C. § 1341 (2000). Vali Mohammad mortgaged his house and rental properties in order to return 100% of the profits and pay the plaintiff's attorney fees, and on September 7, 2000, he pled guilty to the felony charge and was sentenced to 18 months in prison. With good behavior, Vali Mohammad qualified for early release after serving 11 months.

¶ 4    Upon his release from prison in 2001, Vali Mohammad returned to his old job at Stepco, but because manufacturing jobs were moving overseas, he also started his own loan origination and real estate company in Mundelein, Illinois. By 2006, he had five employees, owned his commercial building and five rental homes, and was the recipient of two awards from the Chicago Association of Realtors and one from the chamber of commerce for the communities of Green Oaks, Libertyville, Mundelein, and Vernon Hills, Illinois.

¶ 5    As we indicated above, when Vali Mohammad applied for renewal of his mortgage loan originator license in either 2005 or 2006, he informed the Department of his mail fraud conviction and the Department determined, in its discretion, that this warranted a brief suspension of his license, a fine, and a short term of probation. Section 1-4(hh) of the Mortgage License Act defines a "loan originator" as "any natural person who, for compensation or in the expectation of compensation, either directly or indirectly makes, offers to make, solicits, places, or negotiates a residential mortgage loan" and section 1-3(a) specifies that no person "shall engage in the business of *** originating *** residential mortgage loans without first obtaining a license." 205 ILCS 635/1-3(a), 1-4(hh) (West 2010). Section 7-1 of the Mortgage License Act indicates loan originators must be registered and authorizes the creation of rules and regulations prescribing relevant qualifications, fees, examinations, education, supervision, enforcement, and other criteria. 205 ILCS 635/7-1 (West 2006). A long-standing companion administrative rule indicates applicants must disclose any criminal convictions or adverse civil judgments involving monies, breach of trust, moral turpitude, or misfeasance or malfeasance. See 38 Ill. Adm. Code 1050.2110(a)(6) (2005). The mail fraud statute is a broadly worded federal law which states in relevant part:

> "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin,

obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. 1341 (2000).

See *Rubloff Development Group, Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 745 (N.D. Ill. 2012) (commenting that the "wire and mail fraud statutes are incredibly broad, and require only 'a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for oneself or causing financial loss to another' " (quoting *United States v. O'Connor*, 656 F.3d 630, 644 (7th Cir. 2011)); *United States v. Martin*, 195 F.3d 961, 965 (7th Cir. 1999) ("Concern has long been expressed that the failure of the 'mail fraud statute' to define 'fraud' invites prosecutorial overreaching.") John C. Coffee, *The Metastasis of Mail Fraud: The Continuing Story of the "Evolution" of a White-Collar Crime*, 21 Am. Crim. L. Rev. 1, 3 (1983) ("the reach of the statute continues to be extended further into sensitive areas not previously thought to be subject to the criminal law of fraud").

¶ 6    Vali Mohammad complied with all of the Department's disciplinary terms and for the next few years his applications for license renewal were routinely granted. However, on June 30, 2010, the Department notified Vali Mohammad by mail that section 7-3 of the Mortgage License Act had been amended effective July 31, 2009, that section 7-6(a)(1) indicates renewing licensees must meet the requirements of section 7-3, and that the Department had determined that the amendment disqualified Vali Mohammad from ever again being licensed as a loan originator. 205 ILCS 635/7-3, 7-6 (West 2010). As amended, section 7-3 of the Mortgage License Act provides in pertinent part:

"Issuance of license. The Director shall not issue a mortgage loan originator license unless the Director makes at a minimum the following findings:

\*\*\*

(2) The applicant has not been convicted of, or pled guilty or nolo contendre to, a felony in a domestic, foreign, or military court:

(A) during the 7-year period preceding the date of the application for licensing and registration; or

(B) at any time preceding such date of application, if such felony involved an act of fraud, dishonesty, or a breach of trust, or money laundering;

provided that any pardon of a conviction shall not be a conviction for purposes of this item (2)." 205 ILCS 635/7-3 (West 2010).

¶ 7    Vali Mohammad appealed the Department's refusal to renew and requested a formal evidentiary hearing. An administrative law judge received written briefs and conducted a

one-day hearing in 2010. Vali Mohammad contended in part that "mail fraud" was not typically thought of as "fraud" as that term was used in the Mortgage License Act (205 ILCS 635/7-3(2) (West 2010)), and that the Department should look beyond the statute's title and review that law as well as the actual conduct and circumstances that led to his conviction. Furthermore, he had voluntarily paid "every penny" of restitution long before the case progressed to the sentencing stage and the only money the federal judge ordered him to pay was a $50 court fee. He also contended that his conduct had otherwise been exemplary and that he met all the other requirements for licensing. He tendered a detailed log of the mortgage loans he generated between 2003 and 2010, testified that none of the 533 loans had "gone bad," and expressed confidence that any client the Department contacted would vouch for him. He also testified that it was "not that easy" to compile such a stellar record when "[y]ou meet all kinds of people." Vali Mohammad also contended that the new law was being applied retroactively with "inequitable consequences." The Department responded that the new licensing standards were imposed by the federal Secure and Fair Enforcement for Mortgage Licensing Act of 2008 or "SAFE Act" (12 U.S.C. § 5104 (Supp. II 2009), and intended to create uniform licensing standards within the United States, reduce fraud, and protect consumers; and that the Department was correctly interpreting the Illinois amendment to bar Vali Mohammad from relicensing.

¶ 8    The administrative law judge summarized that Vali Mohammad "testified credibly that his conviction stemmed from a plea agreement in an effort to bring about the end of a lengthy and costly legal battle with a former employer." Also, Vali Mohammad had been "a reliable and productive worker for the companies he represented," his conviction was unrelated to his work as a loan originator, and he wanted to continue working in the field in order to "help his community" and support his family. The administrative law judge concluded:

> "[J]udging from the ample evidence presented by the Registrant, this Court does not feel that this conviction is an accurate representation of Registrant's normal business practices as a loan originator. Rather[,] it was a regrettable choice as a means to end a lengthy and expensive legal battle resulting from a bitter business dispute.
>
> Unfortunately, the applicable law of the State of Illinois is very clear on this matter. A felony conviction involving fraud or dishonesty is a clear violation of 205 ILCS 635/7-3(2) and a complete bar to holding a loan originator license."

Accordingly, the administrative law judge recommended that the Department adhere to its decision of nonrenewal. The Department adopted the recommendation as its final order.

¶ 9    Vali Mohammad filed for administrative review in the circuit court of Cook County. After reviewing the record and the parties' arguments, the circuit court judge also found that the new law was unequivocal and led to unusually harsh consequences:

> "Plaintiff does not deny that he pled guilty to the crime of 'mail fraud.' Contrary to the Plaintiff's assertion, the Court finds that his felony crime of mail fraud falls squarely within the ambit of section 7-3(2) of the Act. The Court finds Plaintiff's assertion that the Department is required to go beyond the label of the crime and ascertain the facts giving rise to the conviction untenable and unpersuasive.
>
> Admittedly, this conclusion leads to a harsh result. Apparently, since his conviction,

Plaintiff has been rehabilitated and done well in his profession. The Act, however, does not take into consideration rehabilitation and other mitigating factors. Indeed, as written, the Act provides for no exceptions. That the Court might favor that the Act provide the Department some discretion is of no import. It is the Court's duty to apply the Act as written and carry out the legislature's intent. *InPhoto Surveillance, Inc. v. Crowe, Chizek & Co., LLP*, 338 Ill. App. 3d 929, 933 (2003). In construing a statute, a court is not at liberty to depart from its plain language and meaning by reading into the statute exceptions, limitations, or conditions where the statute is unambiguous. *Id*. at 933-34. Thus, since Plaintiff was convicted of felony fraud, he cannot qualify to be a loan originator in the State of Illinois under the Residential Mortgage Licensing Act of 1987, as amended."

¶ 10        We review the decision of the administrative agency rather than the decision of the circuit court (*Wilson v. Illinois Department of Financial & Professional Regulation*, 2013 IL App (1st) 121509) and we address the issues *de novo* (*Wilson*, 2013 IL App (1st) 121509; *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20, 975 N.E.2d 153 (constitutionality of statute addressed *de novo*)). The objective of statutory construction is to ascertain and give effect to the legislature's intent. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279, 786 N.E.2d 139, 150 (2003); *County of Knox ex rel. Masterson v. Highlands, LLC*, 188 Ill. 2d 546, 556, 723 N.E.2d 256, 263 (2000). We study the language of a challenged statute, as it is usually " 'the most reliable indicator of the legislature's objectives in enacting a particular law.' " *Cryns*, 203 Ill. 2d at 279, 786 N.E.2d at 151 (quoting *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000)); *County of Knox*, 188 Ill. 2d at 556, 723 N.E.2d at 263. If the language of the statute is plain, clear and unambiguous, it becomes our sole basis for discerning the intent of the legislature and we do not need to resort to other principles of statutory construction. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 475, 702 N.E.2d 529, 532 (1998); *County of Knox*, 188 Ill. 2d at 556, 723 N.E.2d at 263. We are never at liberty to depart from the plain language and meaning of a statute by reading into the language unstated exceptions, limitations, or conditions. *Gem Electronics*, 183 Ill. 2d at 475, 702 N.E.2d at 532; *County of Knox*, 188 Ill. 2d at 556, 723 N.E.2d at 263.

¶ 11        As the Department has argued, the amendment at issue was adopted by the Illinois legislature in 2009, in response to the new federal SAFE Act which Congress enacted in the wake of the national subprime mortgage problem. 12 U.S.C. §§ 5101 to 5116 (Supp. II 2009); Bryce Gray, *The Secure and Fair Enforcement for Mortgage Licensing Act of 2008*, 31 Rev. Banking & Fin. L. 51 (2011) (discussing the circumstances that led to passage of the SAFE Act and explaining the law's components); Lauren Hassouni, *The Nuts, Bolts, Carrots, and Sticks of the Mortgage and Foreclosure Crisis and a Suggested Solution*, 2010 Ann. Surv. Bankr. L. 17 (2011) (explaining the circumstances that led to the housing bubble that burst in 2006 and fueled widespread financial crisis in the United States and abroad). The SAFE Act imposed uniform national standards in order to curb predatory lending practices and required fingerprinting and issuance of unique, life-time identifiers to prevent unscrupulous mortgage loan originators from simply moving from jurisdiction to jurisdiction. Gray, *supra*. Among the SAFE Act's "minimum standards for licensing and registration" for

mortgage loan originators was:

"The applicant has not been convicted of, or pled guilty or nolo contendre to, a felony in a domestic, foreign, or military court–

(A) during the 7-year period preceding the date of the application for licensing and registration; or

(B) at any time preceding such date of application, if such felony involved an act of fraud, dishonesty, or a breach of trust, or money laundering." 12 U.S.C. § 5104(b)(2) (Supp. II 2009).

Consistent with the SAFE Act, Illinois law effective July 31, 2009, precludes the Department from issuing a mortgage loan originator license unless:

"[t]he applicant has not been convicted of, or pled guilty or nolo contendre to, a felony in a domestic, foreign, or military court:

(A) during the 7-year period preceding the date of the application for licensing and registration; or

(B) at any time preceding such date of application, if such felony involved an act of fraud, dishonesty, or a breach of trust, or money laundering." Pub. Act 96-112, § 5 (eff. July 31, 2009) (amending 205 ILCS 635/7-3(2) (West 2008)).

¶ 12    We find that a plain reading of section 7-3 as amended establishes that it applies to Vali Mohammad's conviction in 2000 for a single act of mail fraud and precludes the Department from ever again renewing his mortgage loan originator license. Vali Mohammad has readily admitted to his conviction for the federal felony crime known as "mail fraud" and has disputed only whether this crime is fairly characterized as "fraud" within the meaning of section 7-3 of the Mortgage License Act and whether section 7-3 violates the prohibition on retroactive laws.

¶ 13    On appeal, he has abandoned the first argument[2] and we agree that it is an unpersuasive one. Although one might argue that "mail fraud" ranks low on the scale of "fraud, dishonesty, or a breach of trust, or money laundering" (205 ILCS 635/7-3(2)(B) (West 2010)), "mail fraud" is unquestionably a form of "fraud" as that latter term is used in the amended Mortgage Licensing Act. We will not read in an unexpressed exception, limitation, or condition into the General Assembly's plain and unambiguous statute. The statute does not provide an exception for mail fraud or authorize the Department to consider evidence of rehabilitation or reasons for reducing the length of Vali Mohammad's ban from the field. It makes no difference that Vali Mohammad disclosed the felony conviction prior to the change in federal and state law and that the Department annually evaluated him and repeatedly

---

[2]The argument makes a fleeting appearance in Vali Mohammad's reply brief, but an appellant waives any argument he fails to include in his opening brief. *City of Belleville v. Human Rights Comm'n*, 167 Ill. App. 3d 834, 522 N.E.2d 268 (1988) (citing Ill. S. Ct. R. 341(e)(7) (eff. July 1, 1984) (now Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008))). An appellant also waives any argument unsupported by reasoned argument and citation to relevant authority. Ill. S. Ct. R. 341 (eff. July 1, 2008). In any event, we have addressed it.

deemed him fit to practice as a mortgage loan originator. The 2009 amendment has changed the minimum requirements for practice and Vali Mohammad does not meet the amended requirements.

¶ 14　　On appeal, Vali Mohammad contends only that the law is impermissibly retroactive–which is an argument that we considered and rejected in *Wilson*, 2013 IL App (1st) 121509, ¶ 12. As we explained there, the law is not retroactive because it does not reach back in time and either change the penalty that was imposed by the federal judge in 2000 or penalize Vali Mohammad for conduct that was permissible at the time. The law does not concern his previous work as a mortgage loan originator. Instead, the law concerns Vali Mohammad's conduct subsequent to the amendment's effective date in 2009, and it restricts his present and future participation in the mortgage loan market. The law is not retroactive and it is properly interpreted to bar Vali Mohammad from renewing his mortgage loan originator license. He relies heavily on *Valdez*, but that case is not like this case. *Valdez v. Zollar*, 281 Ill. App. 3d 329, 665 N.E.2d 560 (1996). Maryann Valdez and Nida Gaffud were nursing students who sat for a licensing exam when Illinois law limited them to six attempts but had no time constraint. *Valdez*, 281 Ill. App. 3d at 331, 665 N.E.2d at 561. After Valdez failed the exam four times within two years and Gaffud failed twice within 6 months, Illinois law was amended to require a passing score within three years of the first attempt or the candidate would have to repeat their entire course of nursing studies before being eligible for retesting. *Valdez*, 281 Ill. App. 3d at 331-32, 665 N.E.2d at 561-62. Valdez finally passed on her eighth attempt in 10 years and Gaffud passed on her sixth attempt in 6 years. *Valdez*, 281 Ill. App. 3d at 331-32, 665 N.E.2d at 561-62. The Department denied their licensing applications, but the courts concluded the women had a vested right to rely on the law as it existed when they first sat for the test. *Valdez*, 281 Ill. App. 3d at 333, 665 N.E.2d at 563. The women had detrimentally relied on the prior version of the law and lost the opportunity to attempt additional exams before the three-year time limit expired. *Valdez*, 281 Ill. App. 3d at 333, 665 N.E.2d at 563. Vali Mohammad, however, cannot claim he reasonably relied on the terms of a prior version of the licensing law when he entered into the plea bargain, because the licensing law did not even exist at the time. The licensing law was first enacted after Vali Mohammad was working as a loan originator and the amendment at issue was enacted several years later. We reject his reliance on *Valdez* and adhere to our conclusion that the law is not a retroactive change.

¶ 15　　Accordingly, we affirm the Department's decision of nonrenewal. This outcome is unquestionably harsh. Vali Mohammad had a successful career and unblemished record as a self-employed mortgage loan originator. Apparently none of the 533 loans he helped generate since 2003 resulted in any complaint to the Department. It is unfortunate that his conviction for a single count of mail fraud, more than a decade ago, in an unrelated profession, has led to a life-time prohibition from the mortgage loan field rather than the statute's seven-year prohibition for lesser crimes. However, the law, as it is currently written, dictates this result. " 'Where the words employed in a legislative enactment are free from ambiguity or doubt, they must be given effect by the courts even though the consequences may be harsh, unjust, absurd or unwise. [Citations.] Such consequences can be avoided only by a change of the law, not by judicial construction ***.' " *County of Knox*, 188 Ill. 2d at

557, 723 N.E.2d at 363 (quoting *People ex rel. Pauling v. Misevic*, 32 Ill. 2d 11, 15, 203 N.E.2d 393 (1964)).

¶ 16       Affirmed.