# Illinois Official Reports

## Appellate Court

*Gallaher v. Hasbrouk*, 2013 IL App (1st) 122969

| | |
|---|---|
| Appellate Court Caption | VICTORIA GALLAHER, Plaintiff-Appellant, v. LaMAR HASBROUK, Director of Public Health, JOHN ABRELL, Chief Administrative Law Judge of the Department of Public Health, and THE DEPARTMENT OF PUBLIC HEALTH, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-2969 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | September 30, 2013<br><br>October 31, 2013<br>December 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action filed by a paramedic and emergency medical services instructor seeking to suspend and dismiss an administrative action by the Department of Public Health to revoke her instructor's license, the trial court properly found that plaintiff was not required to exhaust her administrative remedies and it also properly entered summary judgment against plaintiff after rejecting her contention that the Department was required to implement a "plan of correction" pursuant to section 3.130 of the Emergency Medical Services (EMS) Systems Act to address her alleged misconduct before revoking her license, since section 3.130 applies to facilities, systems, and equipment, not individuals. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-21745; the Hon. Franklin U. Valderamma, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Emily Johnson, of Hunter & Johnson P.C., of Godfrey, and Edward Clancy, of Ungaretti & Harris, LLP, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Christopher M.R. Turner, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion. |
| | Presiding Justice Gordon and Justice Palmer concurred in the judgment and opinion. |

## OPINION

¶ 1 Plaintiff Victoria Gallaher, a paramedic and emergency medical services instructor, sought injunctive relief and a declaratory judgment from the circuit court of Cook County to suspend and ultimately dismiss an administrative action brought by the State of Illinois to revoke her instructor's license. The trial court enjoined the administrative action, but later rejected Gallaher's contention that the defendant State agency was misconstruing its statutory authority to revoke her license without first implementing a "plan of correction" to address her alleged misconduct. Gallaher appeals from the trial court's adverse ruling on cross-motions for summary judgment, primarily contending that a section of the Illinois Emergency Medical Services (EMS) Systems Act (hereinafter EMS Act) entitled "Facility, system, and equipment violations; Plans of Correction" (210 ILCS 50/3.130 (West 2010)), applies to individuals and entitled Gallaher to a plan of correction. The three defendants to this appeal are LaMar Hasbrouk, Director of the Department of Public Health, John Abrell, chief administrative law judge of the Department of Public Health, and the Department of Public Health, which we will refer to collectively as the Department.

¶ 2 Gallaher resides in Nauvoo, Illinois, a small community west-southwest of Chicago on the banks of the Mississippi River, across from the state of Iowa. Gallaher contends she currently holds "Emergency Medical Technician-Paramedic" or "EMT-P" licenses in the states of Illinois (210 ILCS 50/3.100, 3.50(c) (West 2012)), Iowa, and Missouri, although the Department counters that her Missouri EMT-P license expired on September 30, 2009. In any

event, the credential at issue is Gallaher's Illinois license as an "EMS Lead Instructor" (210 ILCS 50/3.65 (West 2010)).[1]

¶ 3    Section 3.65 of the EMS Act is entitled "EMS Lead Instructor" and consists of two parts. The first part, subsection (a), defines "EMS Lead Instructor" as "a person who has successfully completed a course of education as prescribed by the Department, and who is currently approved by the Department to coordinate or teach education, training and continuing education courses, in accordance with standards prescribed by this Act and rules adopted by the Department pursuant to this Act." 210 ILCS 50/3.65(a) (West 2010).

¶ 4    The second part, subsection (b), specifies that the Department has "the authority and responsibility" to take certain actions with regard to EMS Lead Instructors. These acts include to dictate minimum education requirements and testing requirements for EMS Lead Instructor candidates, to charge fees to each EMS Lead Instructor candidate for his or her examination and certification and recertification, to require that courses for EMS personnel be "coordinated" by at least one approved EMS Lead Instructor, and to set "standards and procedures for awarding EMS Lead Instructor approval to persons previously approved by the Department to coordinate such courses." Of particular interest here is that the final paragraphs of subsection (b) state that the Department also has "the authority and responsibility" to:

"(7) Suspend or revoke the approval of an EMS Lead Instructor, after an opportunity for a hearing, when findings show one or more of the following:

(A) The EMS Lead Instructor has failed to conduct a course in accordance with the curriculum prescribed by this Act and rules adopted by the Department pursuant to this Act; or

(B) The EMS Lead Instructor has failed to comply with protocols prescribed by the Department through rules adopted pursuant to this Act." 210 ILCS 50/3.65(b) (West 2010).

¶ 5    Section 3.65 is the statute the Department has relied upon in its proceedings against Gallaher. 210 ILCS 50/3.65 (West 2010). According to the Department, Gallaher misstepped in 2007, first by failing to obtain a site code and system approval for EMS courses she began teaching at the high school in Warsaw, Illinois, and again when she was the Lead Instructor for an EMS conference convened in Nauvoo where a speaker taught "pediatric warming/re-warming methods which were not part of the National EMT Curriculum, were contrary to accepted standards of pre-hospital care, unaccepted by pediatric medicine and *** dangerous." The Illini EMS System/Genesis Medical Center (not the Department itself) (hereinafter Illini EMS System), notified Gallaher of its intent to suspend her license on April 19, 2007, but on May 21, 2007, the Illini EMS System converted the proposed suspension into a one-year probation with conditions, essentially that Gallaher could not teach an EMS course without being directly supervised by the Illini EMS System coordinator. According to the

---

[1]The record indicates Gallaher was licensed for the four-year term ending February 28, 2011, and that she reapplied during these proceedings. We presume the Department granted her request subject to the outcome of its administrative action.

Department, Gallaher taught at the Warsaw high school in violation of the local probation and supervision order.

¶ 6　　On or about November 9, 2007, the Department (not the Illini EMS System) called Gallaher and her attorney to a meeting to ask for a "plan of correction," purportedly to avoid further disciplinary measures and a formal administrative action. In December 2007, Gallaher submitted a proposed plan of correction which included that she obtain a site code before the start date of any new course and be supervised for 90 days by an EMS Lead Instructor who would evaluate Gallaher's teaching.

¶ 7　　The Department did not respond to Gallaher's proposed plan of correction and, instead, in February of 2008, filed a notice of intent to suspend her teaching license based on her conduct at the high school. The Department alleged that Gallaher's failure to obtain site codes and system approval from the local EMS medical director (210 ILCS 50/3.100 (West 1996)) was contrary to the protocol prescribed by the Department through its administrative rules and was unprofessional in violation of the EMS Act. See 77 Ill. Adm. Code 515.500(a), (b), (c) (2003); 210 ILCS 50/3.65(b)(7), 3.50(d)(8) (West 1996). The Department further alleged that Gallaher's failure to prevent the nonstandard teaching or to take any steps to correct the nonstandard teaching was contrary to the requirement that classes be consistent with the national EMT curriculum adopted by the Department and was unprofessional. 77 Ill. Adm. Code 515.500(d) (2003); 210 ILCS 50/3.50(d)(8), 3.65(b)(7)(A) (West 1996). In March of 2008, Gallaher denied the Department's allegations, refiled her plan of correction, and requested an administrative hearing. It was in these administrative proceedings that Gallaher first argued that prior to initiating a license suspension hearing pursuant to section 3.65 of the EMS Act, the Department had to follow the protocol set out in section 3.130 of the EMS Act. 210 ILCS 50/3.65, 3.130 (West 1996). The version of section 3.130 that was then in effect was simply entitled "Violations; Plans of Correction" and stated as follows.

> "Except for emergency suspension orders, or actions initiated pursuant to Section 3.90(b)(10) of this Act [which concerns hospitals known as trauma centers], prior to initiating an action for suspension, revocation, denial, nonrenewal, or imposition of a fine pursuant to this Act, the Department shall:
>
> (a) Issue a Notice of Violation which specifies the Department's allegations of noncompliance and requests a plan of correction to be submitted within 10 days after receipt of the Notice of Violation;
>
> (b) Review and approve or reject the plan of correction. If the Department rejects the plan of correction, it shall send notice of the rejection and the reason for the rejection. The party shall have 10 days after receipt of the notice of rejection in which to submit a modified plan;
>
> (c) Impose a plan of correction if a modified plan is not submitted in a timely manner or if the modified plan is rejected by the Department;
>
> (d) Issue a Notice of Intent to fine, suspend, revoke, nonrenew or deny if the party has failed to comply with the imposed plan of correction, and provide the party with an opportunity to request an administrative hearing. The Notice of Intent shall be effected

by certified mail or by personal service, shall set forth the particular reasons for the proposed action, and shall provide the party with 15 days in which to request a hearing." 210 ILCS 50/3.130 (West 1996).

¶ 8 Gallaher moved for summary judgment in the administrative proceedings, arguing that license revocation was premature because the Department had not followed the plan of correction procedure set out in section 3.130 and its companion Administrative Code, title 77, section 515.160, which adds detail to the statute. 77 Ill. Adm. Code 515.160, amended at 20 Ill. Reg. 11602 (eff. Apr. 15, 1997). Gallaher reiterated that she was also disputing the allegations that she violated the suspension order. On September 8, 2010, the assistant chief administrative law judge (ALJ) assigned to the matter recommended that the agency accept Gallaher's argument that section 515.160 was controlling and entitled her to a plan of correction, but also conclude that Gallaher's motion for summary judgment should be denied because there were questions of fact as to whether Gallaher ignored the suspension order. The ALJ further recommended that the Department's notice of intent be dismissed "with leave to re-file under 77 Ill. Adm. Code 515.160." On September 17, 2010, the director of the Department issued an order adopting the ALJ's recommended disposition of the action.

¶ 9 Also in 2010, the Illinois legislature amended section 3.130 of the EMS Act by changing its title from "Violations; Plans of Correction" to the more specific, "Facility, system, and equipment violations; Plans of Correction." Pub. Act 96-1469 (eff. Jan. 1, 2011). Also, where the prior version of the law stated, "Except for emergency suspension orders, or actions initiated pursuant to Section 3.90(b)(10) of this Act [which concerns hospitals known as trauma centers] prior to initiating an action" (210 ILCS 50/3.130 (West 1996)) the amended version stated, "Except for emergency suspension orders, or actions initiated pursuant to Sections *3.117(a), 3.117(b), and* 3.90(b)(10) of this Act, prior to initiating an action ***." (Emphasis added.) 210 ILCS 50/3.130 (West 2010). The three statutory sections were references to facilities known as "Primary Stroke Centers" (210 ILCS 50/3.117(a) (West 2010)), "Emergent Stroke Ready Hospitals" (210 ILCS 50/3.117(b) (West 2010)), and "Trauma Centers" (210 ILCS 50/3.90 (West 2010)).

¶ 10 To implement this amendment, the Department amended the companion Administrative Code section, title 77, section 515.160(a) (hereinafter EMS Code), "to clarify that plans of correction apply only to violations of the Act regarding facilities, systems, and equipment." 35 Ill. Reg. 15280, 15286.

¶ 11 Then, on March 30, 2011, the Department served Gallaher with a notice of violation and intent to revoke her Lead Instructor's approval in accordance with section 3.65(b)(7) of the amended statute. 210 ILCS 50/3.65(b)(7) (West 2010). Like the 2008 notice of intent, the 2011 notice of intent alleged Gallaher taught at the high school without obtaining site codes and Department approval as required by the EMS Code. The 2011 notice of intent also referred to the nonstandard pediatric techniques that were taught under Gallaher's supervision at the Nauvoo EMS conference.

¶ 12 Gallaher moved to dismiss the 2011 proceedings, once again arguing that a plan of correction was a prerequisite, but this time the argument was unsuccessful and the ALJ indicated Gallaher needed to comply with the Department's requests for discovery in the

administrative action. Gallaher filed a motion to reconsider, which the ALJ denied, specifically rejecting Gallaher's contention that *res judicata* barred the Department from relitigating the relevance of a plan of correction, and pointing out that (1) the ALJ in the 2008 matter clearly recommended that the Department be given leave to refile, (2) the Director issued a final order which accepted this recommendation, and (3) the Department had refiled. The ALJ also specified that the Department's discovery requests "were proper" and that the documents should be produced.

¶ 13    At this juncture, Gallaher filed for declaratory and injunctive relief in the circuit court, alleging that the administrative action should be enjoined for three reasons. In count I, she contended the action was contrary to section 3.130 of the EMS Act. In count II, she alleged the action was contrary to title 77, sections 515.160 and 515.700, of the EMS Code for instituting revocation actions. 77 Ill. Adm. Code 515.160, amended at 20 Ill. Reg. 11602 (eff. Apr. 15, 1997); 77 Ill. Adm. Code 515.700 (2003). In count III, Gallaher alleged the Director's "FINAL ORDER" in 2010 triggered the doctrine of collateral estoppel and precluded any further action by the Department. Gallaher also sought a declaratory judgment stating these three conclusions. In addition to her complaint, Gallaher filed a motion for a preliminary injunction to prohibit the Department from pursuing the 2011 administrative action or compelling her to comply with its discovery requests.

¶ 14    The Department filed a combined response to Gallaher's motion for injunctive relief and motion to dismiss her complaint on grounds that she failed to exhaust her administrative remedies and could not succeed on the merits of her pleading. The circuit court rejected the argument for dismissal, finding that Gallaher was not required to exhaust her administrative remedies before pursuing judicial relief because "agency expertise is not involved" and it would be futile for her to exhaust her administrative remedies. The circuit court, however, also denied Gallaher's motion for an injunction, because Gallaher did not show that she would suffer irreparable harm.

¶ 15    The circuit court also ruled in the Department's favor when the parties filed cross-motions for summary judgment on Gallaher's complaint. With regard to count I, the court held that section 3.130 of the EMS Act applies only to disciplinary actions against EMS systems and facilities and for violations of equipment standards, and thus, section 3.130 does not require the Department to implement a plan of correction against a lead instructor for his or her personal violation of section 3.65. The court reached the same conclusions about title 77, section 515.160, of the companion Administrative Code, as it was pled in count II. As for count III, the court found collateral estoppel was not triggered by the Director's 2010 administrative order dismissing the 2008 notice of intent with leave to refile, because the Director's decision was not a final judgment on the merits. This appeal followed.

¶ 16    Gallaher opens her appeal with her collateral estoppel and *res judicata* arguments regarding the Director's 2010 order. She next argues she was entitled to a plan of correction either because section 3.130 of the EMS Act has always applied to individuals and its newly revised title even refers to individuals because people are part of the EMS "system" (210 ILCS 50/3.130 (West 2010); Pub. Act 96-514, § 10 (eff. Jan. 1, 2010); Pub. Act 96-1469, § 5 (eff. Jan. 1, 2011)), or because the revised version of title 77, section 515.160, of the EMS Code

addresses disciplinary actions against individuals, where the body of the administrative code refers to "System participants" (77 Ill. Adm. Code 515.160(e), amended at 20 Ill. Reg. 11602 (eff. Apr. 15, 1997); Pub. Act 96-1469 (eff. Jan. 1, 2011)). In the event we do not find these first two arguments persuasive, Gallaher has a third: the Department was not entitled to summary judgment where she argued in her cross-motion that charges against her lack merit. Gallaher says that the circuit court should have addressed this additional argument, but for no apparent reason never reached it. The Department responds that the court's only error was deciding Gallaher did not need to exhaust her administrative remedies.

¶ 17    We first address the Department's exhaustion of remedies argument, because it could be dispositive of the appeal. The Department contends we may affirm the summary judgment ruling in its favor on grounds that Gallaher failed to exhaust her administrative remedies. We know that the Department presented exhaustion and other arguments in its cross-motion for summary judgment, but it was the other arguments that were persuasive to the circuit court. The Department is relying on the principle that an appellee "may urge any point in support of the judgment on appeal," even if that point was not argued in the circuit court, so long as the factual basis for that point was before the circuit court. (Internal quotation marks omitted.) *Beahringer v. Page*, 204 Ill. 2d 363, 370, 789 N.E.2d 1216, 1222 (2003). Another relevant principle is that we can affirm on any basis in the record, whether or not the trial court relied on that basis or the court's reasoning was correct. *Board of Education of Marquardt School District No. 15 v. Regional Board of School Trustees*, 2012 IL App (2d) 110360, ¶ 16, 969 N.E.2d 431; *Benson v. Stafford*, 407 Ill. App. 3d 902, 912, 941 N.E.2d 386, 397 (2010). In other words, our role is to review the court's judgment, not its specific reasoning leading up to that decision. Gallaher counters that she did not discuss exhaustion in her opening brief and that we should disregard it because it appears in the Department's response brief rather than through a cross-appeal. She erroneously relies on *Burrgess v. Industrial Comm'n*, 169 Ill. App. 3d 670, 523 N.E.2d 1029 (1988), and *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 653 N.E.2d 968 (1995), which merely indicate that if an appellee wants an appellate court to review additional decisions, the appellee must preserve those issues by filing its own appeal or cross-appeal. This concept is irrelevant because the Department is not asking us to revisit the adverse decision on its motion to dismiss; the Department is reiterating an argument, albeit an unsuccessful one, found in its motion for summary judgment and urging us to reject Gallaher's appeal on that basis. Gallaher could have anticipated this argument and she should have addressed it in her opening brief. Accordingly, we proceed to the merits of this exhaustion argument.

¶ 18    The general rule is that a party that disagrees with an agency's administrative action cannot seek judicial review, including through actions for injunctive and declaratory relief, without first pursuing all of the administrative remedies available to him or her. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 308, 547 N.E.2d 437, 439 (1989) (indicating employment discrimination plaintiff must pursue rehearing from an *en banc* panel of the Human Rights Commission in order to exhaust administrative remedies and obtain final order reviewable in the circuit court); *Dock Club, Inc. v. Illinois Liquor Control Comm'n*, 83 Ill. App. 3d 1034, 1037, 404 N.E.2d 1050, 1053 (1980) (determining Springfield tavern cited for reducing drink prices for certain patrons on "ladies nights" could not maintain action for

injunction and declaratory judgment due to "well-settled law in this State that where administrative remedies are available, they must be exhausted before one can seek judicial review"); *Beahringer*, 204 Ill. 2d 363, 789 N.E.2d 1216 (Statesville inmate whose paints and other art materials were confiscated was expected to exhaust written grievance process prior to filing complaint for injunctive and declaratory relief); *Illinois Bell Telephone Co. v. Allphin*, 60 Ill. 2d 350, 358, 326 N.E.2d 737, 742 (1975) (indicating the exhaustion doctrine is a basic and long-standing principle of administrative law and is a counterpart to the procedural rule that appellate review is generally limited to final judgments of the trial court).

> "Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority in that it gives an agency an opportunity to correct its own mistakes *** and it discourages disregard of the agency's procedures, and second, it promotes efficiency in that claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in court. The doctrine helps protect agency processes from impairment by avoidable interruptions *** and conserves valuable judicial time by avoiding piecemeal appeals. The requirement that a plaintiff exhaust administrative remedies as a prerequisite to filing suit allows the administrative agency the opportunity to consider the facts of the case before it, use its expertise, and allow the aggrieved party to obtain relief without the need for judicial review. [Citation.]" 1 Ill. L. and Prac., *Administrative Law and Procedures* § 16 (2013).

¶ 19   We hold that Gallaher was not required to exhaust her administrative remedies because she came within an exception by challenging the agency's authority to proceed with the pending license revocation action under a statute or administrative rule. When an agency's statutory authority to promulgate a rule and exercise jurisdiction is in issue, then no questions of fact are involved and the agency's expertise is not needed for statutory construction. *Landfill, Inc. v. Pollution Control Board*, 74 Ill. 2d 541, 550, 387 N.E.2d 258, 261 (1978) (circuit court properly exercised jurisdiction over question of Pollution Control Board's authority to create rule authorizing third parties to initiate permit-revocation proceedings); *Emerald Casino, Inc. v. Illinois Gaming Board*, 346 Ill. App. 3d 18, 24, 803 N.E.2d 914, 919 (2003) ("All we have to do in this appeal is read the statute for legislative intent. We know how to do that."). Determining the scope of any agency's power and authority is a judicial function, rather than a question for the agency to answer itself. *Emerald Casino*, 346 Ill. App. 3d 18, 803 N.E.2d 914 (casino not required to exhaust administrative remedies where it challenged whether statute conveyed discretion or mandated that Gaming Board approve casino's application for license renewal and relocation); *On-Line Financial Services, Inc. v. Department of Human Rights*, 228 Ill. App. 3d 99, 103, 592 N.E.2d 509, 511 (1992) (employer not required to exhaust administrative remedies where it challenged whether Department of Human Rights had authority to file an employment discrimination complaint after the 300-day filing period specified by statute); *County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 723 N.E.2d 256 (2000) (question of whether county zoning board of appeals had authority to cancel construction permit for large scale hog confinement facility, where enabling legislation expressly denied zoning authority over land used for agricultural purposes, came

within exception to exhaustion doctrine); *Office of the Lake County State's Attorney v. Illinois Human Rights Comm'n*, 200 Ill. App. 3d 151, 156, 558 N.E.2d 668 (1990) (and cases cited therein) (Lake County State's Attorney was not required to first exhaust administrative remedies before Illinois Human Rights Commission where he disputed its authority to hear discrimination charge when he was not an "employer" or "person" and an assistant State's Attorney was not an "employee" within the meaning of the Illinois Human Rights Act). "An administrative agency is different from a court because an agency only has the authorization given to it by the legislature through the statutes." *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243, 555 N.E.2d 693, 716 (1989). An administrative agency has no general or common law powers. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553, 837 N.E.2d 909, 914 (2005). Its powers are strictly limited to the powers specified by the legislature. *Alvarado*, 216 Ill. 2d at 553, 837 N.E.2d 909. Judicial determination of this question of law as to Gallaher will affect the jurisdiction of the administrative agency in all cases. Accordingly, the circuit court had jurisdiction to hear counts I and II of Gallaher's action for injunctive and declaratory relief. Furthermore, the assertion of the collateral estoppel doctrine in count III with regard to the first administrative proceedings brought that count within an exception to the exhaustion doctrine, because it presented a legal issue rather than a factual question, which is an issue within the scope of the court's expertise, rather than the Department's. *Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 578, 695 N.E.2d 873, 879 (1998) (exhaustion not required where village board of fire and police sought declaratory judgment that sovereign immunity deprived Department of Human Rights and Human Rights Commission of authority to investigate allegation of employment discrimination and that *res judicata* deprived agencies of authority to address a second action about the same issue). Although the precedent Gallaher relies upon concerns *res judicata*, we hold that the concepts of *res judicata* and collateral estoppel are sufficiently similar for the precedent to apply here.

¶ 20    For these reasons, we conclude that the Department's exhaustion of remedies argument does not dispose of the appeal and we proceed to Gallaher's arguments, beginning with the contention that the doctrines of *res judicata* or collateral estoppel barred the Department from bringing a second administrative action which included the issue of whether the plan of correction procedures in section 3.130 of the EMS Act and title 77, section 515.160, of the companion Administrative Code are applicable to a lead instructor.

¶ 21    *Res judicata*, or claim preclusion, refers to the preclusive effect that a final judgment on the merits has on the parties, in that it forecloses litigation of any claim that was, or could have been, raised in an earlier suit between the parties or their privies. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302, 703 N.E.2d 883, 889 (1998); *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199, 1204 (1996). Thus, when the doctrine is applied, a party is prevented from splitting his or her claims into multiple actions. *Rein*, 172 Ill. 2d at 339, 665 N.E.2d at 1206. Collateral estoppel, or issue preclusion, is much narrower in that it prevents relitigation of issues of law or fact that have previously been litigated and decided in an action that resulted in a final judgment on the merits involving the same parties or their privies. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77,

744 N.E.2d 845, 849 (2001) (rejecting argument that collateral estoppel should apply only to fact determinations); *Schratzmeier v. Mahoney*, 246 Ill. App. 3d 871, 875, 617 N.E.2d 65, 66 (1993) (collateral estoppel precludes the relitigation of any matter); *Dowrick v. Village of Downers Grove*, 362 Ill. App. 3d 512, 515-16, 840 N.E.2d 785, 789-90 (2005). In other words, under collateral estoppel, the final judgment in the first suit acts as a bar only to the points or questions that were actually litigated and determined, rather than to matters that might have been litigated and determined but were not. *LaSalle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 635, 826 N.E.2d 449, 456 (2005). The doctrines of *res judicata* and collateral estoppel serve the same purposes of promoting judicial economy and preventing repetitive litigation. *Hayes v. State Teacher Certification Board*, 359 Ill. App. 3d 1153, 1161, 835 N.E.2d 146, 154 (2005). Both doctrines are applicable to the decisions of administrative agencies, as long as the agency was acting in an adjudicatory, judicial or quasi-judicial capacity and the disputed issue is identical to the issue presented in the new claim. *Schratzmeier*, 246 Ill. App. 3d at 875, 617 N.E.2d at 68.

¶ 22    We find that Gallaher waived any reliance on the doctrine of *res judicata* by failing to plead it in her complaint. *Rivera v. Arana*, 322 Ill. App. 3d 641, 651-52, 749 N.E.2d 434, 443 (2001) (plaintiff's failure to plead a legal issue results in waiver).

¶ 23    Regardless, we also find that neither *res judicata* nor collateral estoppel precludes the second administrative action because the 2010 administrative order was not a final judgment on the merits. The precedent cited above indicates that *res judicata* and collateral estoppel are triggered only by final judgments on the merits. A final judgment is a determination of the issues presented which ascertains and fixes absolutely and finally the rights of the parties. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47, 981 N.E.2d 981. However, here, the Director's 2010 order incorporates the ALJ's recommended findings in their entirety, including her conclusions that (1) Gallaher's motion for summary judgment on the Department's action should be denied and (2) the Department's action should be dismissed but with "leave to re-file." The rejection of Gallaher's motion for summary judgment plainly indicates that the merits of the Department's action remained unresolved. The Director's 2010 order concluded only a preliminary, procedural matter (Gallaher's right to a plan of correction under the law and administrative code sections then in effect) and left open the substantive issue of whether Gallaher should lose her teaching credentials. The dismissal with leave to refile is an additional indication that the 2010 ruling was not meant to conclude the ultimate question of whether Gallaher's teaching credentials should be revoked. See, *e.g.*, *Hernandez*, 2012 IL 113054, ¶ 47, 981 N.E.2d 981 (dismissal with leave to file an amended complaint did not absolutely and finally settle parties' rights and so was not a final judgment supporting application of *res judicata*); *Domingo v. Guarino*, 402 Ill. App. 3d 690, 932 N.E.2d 50 (2010) (two prior dismissals did not trigger *res judicata* so as to bar refiling); *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 330, 917 N.E.2d 100, 104-05 (2009) (voluntary dismissal with leave to refile did not preclude a second action). In other words, the Director's 2010 order did not absolutely and finally fix the rights of the parties with regard to the Department's claim. The 2010 order expresses the Director's intention that the first administrative action was not a final judgment on the merits of the disciplinary action and the Department would be able

to proceed with its case at some point in the future. Thus, it was not a final judgment for purposes of *res judicata* or collateral estoppel.

¶ 24 Gallaher emphasizes the 2010 order is captioned "FINAL ORDER," and states "This is a final administrative decision within the provisions of the Emergency Medical Services System Act and the Administrative Review Law." The title and phrase are boilerplate language from section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2008)) which is used to notify parties that the limitations period to commence an administrative review action has begun. *Sherman West Court v. Arnold*, 407 Ill. App. 3d 748, 944 N.E.2d 467 (2011) (boilerplate language reciting that the agency's Director adopted hearing officer's findings and the order was a final administrative decision within meaning of Nursing Home Care Act and Administrative Review Law did not settle question of whether order was actually a final administrative decision within meaning of those statutes, question was whether the order terminated all proceedings before the administrative agency). This language does not resolve whether an order is a final order for purposes of judicial review or purposes of *res judicata* or collateral estoppel. *Sherman West Court*, 407 Ill. App. 3d 748, 944 N.E.2d 467. It is well established that it is the substance of an order, not its form, that matters. *Sherman West Court*, 407 Ill. App. 3d 748, 944 N.E.2d 467 (citing, *e.g.*, *In re A Minor*, 127 Ill. 2d 247, 260, 537 N.E.2d 292 (1989) ("An apple calling itself an orange remains an apple."); see also generally *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 563 N.E.2d 459 (1990) (discussing finality of orders for purposes of appeal)). The substance of this order indicates the Director resolved only a preliminary, procedural matter and expected the parties to return to address the merits once the Department was ready to refile. The substance of the order indicates the order cannot be construed as a final judgment order for purposes of *res judicata* or collateral estoppel. See *Quintas*, 395 Ill. App. 3d at 334, 917 N.E.2d at 104-05 (where trial judge clearly and unmistakably granted leave to refile, plaintiff's subsequent suit was not barred by *res judicata*).

¶ 25 The collateral estoppel argument also fails because the order addressed a procedural question, rather than disposing of a "separate branch" of the controversy between the parties. In *Wilson*, for instance, the court held that an order which resolved whether doctors were actual agents of a hospital in a medical negligence action did not resolve a separate branch of the controversy between the parties. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶¶ 19-26, 981 N.E.2d 971. The question of actual or apparent agency was merely part of the duty analysis in a case where the plaintiffs sought to hold the hospital liable for the doctors' alleged negligence, and resolving this partial issue did not resolve the much larger questions of whether there was a duty, breach of duty, proximate cause, and damages. *Wilson*, 2012 IL 112898, ¶ 24, 981 N.E.2d 971. Thus, *Wilson* stands for the proposition that a "separate branch" of the controversy between the parties means a whole count or separate and distinct cause of action, not merely some of the allegations.

¶ 26 Furthermore, even if we accepted Gallaher's erroneous contention that the 2010 order could be construed as a final judgment order for purposes of collateral estoppel because it resolved a discrete issue (relevance of the plan of correction procedures), we would find no collateral estoppel under the current facts because the doctrine extends only to the facts and

conditions that existed when the original judgment order was entered. *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, ¶ 44, 988 N.E.2d 1020. The statute and the corresponding administrative code have been amended since 2008. When a law is changed between two causes of action on the same subject matter, there is no danger of repetitive litigation and the change in law renders the doctrines of *res judicata* or collateral estoppel inapplicable. *Consiglio*, 2013 IL App (1st) 121142, ¶¶ 44-46, 988 N.E.2d 1020 (indicating there was no *res judicata* effect when Department's original orders in license revocation proceeding were based on law as it existed at the time; current revocation orders under amended statute responded to a different issue). The 2010 order could not act as collateral estoppel with respect to a statute it did not construe.

¶ 27        For these reasons, we reject Gallaher's primary appellate argument that the doctrines of *res judicata* or collateral estoppel barred the second administrative action.

¶ 28        Gallaher next argues that the language of section 3.130 required the Department to apply its plan to correction procedures to lead instructors before initiating its disciplinary action against her under section 3.65. She relies solely on section 3.130, rather than any language in section 3.65. It is undisputed that section 3.65 expressly authorizes the Department to suspend or revoke licensing approval of a lead instructor when that individual has failed to adhere to the curriculum or protocol prescribed under the EMS Act or the administrative rules. 210 ILCS 50/3.65(b) (West 2010). Although section 3.65(b) requires "an opportunity for a hearing," it does not refer to a plan of correction or to section 3.130. See 210 ILCS 50/3.65(b) (West 2010).

¶ 29        Questions of statutory construction as well as orders granting summary judgment are reviewed *de novo*. *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 404, 910 N.E.2d 85, 91 (2009). Our role in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 106, 838 N.E.2d 894, 898 (2005). The language of the statute, given its plain and ordinary meaning, is considered the best indicator of the legislature's intent. *Andrews*, 217 Ill. 2d at 106, 838 N.E.2d at 898. We are to construe the statute as a whole, considering its words and phrases not in isolation but in light of other relevant provisions, and keeping in mind the subject the statute addresses and the legislature's apparent objective in enacting it. *Andrews*, 217 Ill. 2d at 106, 838 N.E.2d at 898.

¶ 30        Applying these principles, we begin with the title of section 3.130, which, as of January 2011, excludes individuals by specifying that it concerns "[f]acility, system, and equipment violations" rather than "violations" in general. 210 ILCS 50/3.130 (West 2010); Pub. Act 96-1469 (eff. Jan. 1, 2011). In addition, the opening sentence now refers to sections 3.117(a), 3.117(b) and 3.90(b)(10) of the EMS Act, which concern types of facilities within the EMS system known as "Primary Stroke Centers," "Emergent Stroke Ready Hospitals," and "Trauma Centers," rather than personnel. The remaining sentences and paragraphs of section 3.130 do not refer to any entity or individual but provide for a notice of violation to be answered by a plan of correction and a notice of intent to fine, revoke, and so forth, to be answered by a plan of correction. Then, looking at the overall organization of the EMS Act, which consists of 66 substantive sections, we see that section 3.130 is neighbored by sections that define and set standards for vehicle service providers, such as ambulances and other

specialized medical vehicles, and other sections that define and set standards for facilities to meet in order to be designated as primary stroke centers, emergent stroke ready hospitals, and trauma centers. In contrast, section 3.65, which is the section specific to Lead Instructors, is neighbored by sections about other individuals, such as first responders, emergency medical dispatchers, trauma nurses, and emergency communications nurses. Thus, both the express content and the context of section 3.130 within the overall EMS Act indicate that section 3.130 concerns facility, system, and equipment issues rather than individual medical personnel problems. We read section 3.130 to unambiguously apply the plan of correction procedure to EMS entities and equipment only and not to EMS personnel.

¶ 31        We are not persuaded by Gallaher's contention that this construction places undue emphasis on the statute's title. For one thing, we considered more than just the title of section 3.130 before reaching this conclusion, and for another, we must give some effect to all the words the legislature has used. Gallaher relies on *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947), for the proposition that "headings and titles are not meant to take the place of the detailed provisions of the text" and "the heading of a section cannot limit the plain meaning of the text." Also, "[w]here the text is complicated and prolific, headings and titles can do more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless." *Brotherhood*, 331 U.S. at 528. Gallaher also quotes the statement in *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 661, 840 N.E.2d 704, 713 (2005), that headings are only "organizational devices" and "case law warns against putting undue emphasis on [them]." We do not consider this principle helpful when construing a statute that is short and uncomplicated and its body, title, and context within the complete EMS Act all consistently indicate that the legislature intended to limit the statute's application to entities and equipment. We have not used the title to disregard or override any statutory language. Our analysis is consistent with the indications in *Brotherhood* and *Illinois Bell* that the legislature's plain words and context in which they are used are key to the proper interpretation of an unambiguous statute. *Brotherhood*, 331 U.S. at 527-29 (considering heading, paragraph, and surrounding paragraphs to determine proper interpretation of paragraph); *Illinois Bell*, 362 Ill. App. 3d at 659-60, 840 N.E.2d at 711 ("In statutes and other forms of discourse, people rely on context to tacitly limit the scope of statements that, taken in isolation, would be too broad."). Neither case instructs us to disregard the title chosen by the legislature. Instead, *Brotherhood* and *Illinois Bell* indicate that giving inordinate emphasis to a title can distort the intended meaning of the statute. On the other hand, we cannot disregard a title and render some of the legislature's words meaningless or superfluous. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990) (ascertaining the meaning of a statute requires reading it as a whole, with all relevant parts considered, and no word or phrase rendered superfluous or meaningless); *Picerno v. 1400 Museum Park Condominium Ass'n*, 2011 IL App (1st) 103505, ¶ 23, 959 N.E.2d 1268 (statute's words, clauses, and sentences are given some reasonable meaning and, to the extent possible, no statutory language is rendered superfluous or meaningless). Our role is to give effect to the legislature's enactment. What we have done here

is read all parts of the statute as a harmonious whole and reached the unavoidable conclusion that section 3.130 is not relevant to individual lead instructors.

¶ 32    We also reject Gallaher's contention that section 3.130 applies to her because she is part of the EMS system. In support she relies on the EMS Act's definition of an "EMS System" as "an organization of hospitals, vehicle service providers and *personnel* approved by the Department." (Emphasis added.) 210 ILCS 50/3.20(a) (West 2010). She contends that she is a member of the EMS System personnel and thus encompassed by the statute now entitled, "Facility, system, and equipment violations; Plans of Correction." 210 ILCS 5/3.130 (West 2010). Gallaher misapplies the definition. Gallaher is an individual rather than "an organization of hospitals, vehicles and personnel." Gallaher is not an "EMS System." Essentially she is proposing that the title of section 3.130 should be construed as "Facility, [hospitals, vehicles and personnel] and equipment violations, Plans of Correction," which is nonsensical and violates the principle that a statute should not be construed so that it results in absurdity. *Illinois Bell*, 362 Ill. App. 3d at 661, 840 N.E.2d at 712. We construe section 3.20 to be a general definition and section 3.130 to be the more specific and conclude that the more specific provision controls the scope of the plan of correction procedure. *Illinois Bell*, 362 Ill. App. 3d at 661, 830 N.E.2d at 713.

¶ 33    Finally, we decline to reach Gallaher's contentions, brought for the first time on appeal, that (1) the law is impermissibly retroactive (see *Mohammad v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 122151, ¶ 14, 993 N.E.2d 90) and (2) her alleged conduct did not violate the statutes and administrative codes that the Department cited in its 2011 notice of intent. *Rivera*, 322 Ill. App. 3d at 651-52, 749 N.E.2d at 443 (plaintiff's failure to plead a legal issue results in waiver).

¶ 34    Based on our *de novo* review, we affirm the circuit court's summary judgment ruling in favor of the administrative agency and against Gallaher.

¶ 35    Affirmed.