Docket Nos. 86891, 87002 cons.–Agenda 28–September 1999.

THE COUNTY OF KNOX 
ex rel.
 ROBERT MASTERSON, Knox County Zoning Department Administrator, 
et al.
, Appellants, 

 v. THE HIGHLANDS, L.L.C., 
et al.
, Appellees.

Opinion filed December 2, 1999.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

The Highlands, L.L.C., filed a complaint in the circuit court of Knox County against the Knox County zoning board of appeals (board), Knox County State’s Attorney Paul Mangieri, and John Leonard, one of others hereafter collectively referred to as “Objectors.” The Highlands sought a determination that it could proceed to construct and operate a large-scale hog confinement facility. In two separate complaints against the Highlands, Knox County (county) and Leonard sought an injunction barring the construction of the facility.

The circuit court granted summary judgment in favor of the Highlands. The appellate court, with one justice dissenting, upheld the judgment of the circuit court. 302 Ill. App. 3d 342. We allowed the county’s and Leonard’s separate petitions for leave to appeal (177 Ill. 2d R. 315) and consolidated the causes for review. We now affirm the appellate court.

BACKGROUND

The record contains the following pertinent facts. Patricia Baird, a co-owner of the Highlands, and her husband James, own land in a rural, unincorporated area of the county. The Highlands applied to the county zoning department for a construction permit to erect six buildings as part of a hog confinement facility. Several days later, the zoning department issued the permit.

Approximately three months later, the Objectors appealed the issuance of the construction permit to the board. They contended, 
inter alia
, that “the use of the property [
i.e.
, a large-scale hog confinement facility] is not a customary agricultural use in this area.” They sought to “cancel construction permit and maintain ‘F’ [farming] zoning.” The permit was suspended, thereby staying construction pending the appeal.

The board held a public hearing on the appeal, where it received testimony and written evidence both for and against the issuance of the construction permit. Four of the five board members were present. At the close of the evidence, two members voted to rescind the permit and one passed his vote. The chairman did not vote; he explained that since four votes were necessary to rescind the permit, the motion to rescind could not carry even if he voted in its favor. Accordingly, the chairman ruled that the motion to rescind failed.

Two days later, however, Mangieri advised the zoning department that the construction permit suspension should remain effective until the legal effect of the board’s action was clarified. Mangieri subsequently opined that the motion to rescind the construction permit had passed. The zoning department notified the Highlands that the board had granted the appeal and canceled the construction permit.

Despite having been told that the permit had been canceled, the Highlands began ground preparation on the proposed construction site. The zoning department then notified the Highlands that it was in violation of the county zoning rules and directed it to cease all construction activities immediately.

The Highlands filed in the circuit court a complaint for declaratory and injunctive relief, in which it sought to enjoin the county from enforcing its zoning rules (counts I through III). The Highlands also sought administrative review of the board’s decision (count IV). The county then filed a complaint seeking injunctive relief against the Highlands; Leonard filed a similar complaint.

The Highlands then moved for summary judgment in all three pending cases. In the cases brought against it, the Highlands sought summary judgment on all counts. In the case it brought, the Highlands sought summary judgment only on the counts seeking declaratory and injunctive relief. The circuit court granted the Highlands summary judgment in all three cases. The court included a finding that the board lacked jurisdiction to proceed because the Highlands was engaged in an agricultural purpose, which is exempt from zoning regulations pursuant to the Counties Code. See 55 ILCS 5/5–12001 (West 1998). In light of this finding, the Highlands subsequently dismissed the remaining count of its complaint seeking administrative review.

The appellate court, with one justice dissenting, upheld the judgment of the circuit court. 302 Ill. App. 3d 342. The appellate court held that: (1) the circuit court could hear the Highlands’ motions for summary judgment (302 Ill. App. 3d at 344-45); and (2) the county lacked zoning authority over the Highlands (302 Ill. App. 3d at 345-48). The county and Leonard appeal to this court.

DISCUSSION

In reviewing a trial court’s entry of summary judgment, the only issue on appeal is whether “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 735 ILCS 5/2–1005(c) (West 1998). This case turns on the meaning of the term “agriculture” found in the Counties Code. 55 ILCS 5/5–12001 (West 1998). The interpretation of a statute is a matter of law for the court and appropriate for summary judgment. 
Matsuda v. Cook County Employees’ & Officers’ Annuity & Benefit Fund
, 178 Ill. 2d 360, 364 (1977); see 
Lane v. Titchenel
, 204 Ill. App. 3d 1049, 1053 (1990); 
People ex rel. Rappaport v. Drazek
, 30 Ill. App. 3d 310, 313-14 (1975). Review is 
de novo
. 
Matsuda
, 178 Ill. 2d at 364. Prior to addressing the merits, however, we must first address a preliminary matter.

I. Exhaustion of Administrative Remedies

The parties disagree on whether the circuit court could hear the Highlands’ claim for injunctive relief. The county and Leonard characterize the Highlands’ claim as an improper collateral attack on the board’s decision, which should have been subject only to administrative review.

In support of their position, the county and Leonard correctly note that, pursuant to the Counties Code, the county has the power to regulate the location and use of buildings on unincorporated land. See 55 ILCS 5/5–12001 (West 1998). Further, the Counties Code provides that all final decisions of zoning boards of appeals are subject to judicial review pursuant to the Administrative Review Law (735 ILCS 5/3–101 
et seq
. (West 1998)). See 55 ILCS 5/5–12012 (West 1998). The county and Leonard then rely on the doctrine of exhaustion of administrative remedies: a party aggrieved by an administrative decision ordinarily cannot seek judicial review without first pursuing all available administrative remedies. 
Castaneda v. Illinois Human Rights Comm’n
, 132 Ill. 2d 304, 308 (1989). The exhaustion doctrine includes administrative review in the circuit court. Where the Administrative Review Law is applicable and provides a remedy, a circuit court may not redress a party’s grievance through any other type of action. The court’s power to resolve factual and legal issues arising from an agency’s decision must be exercised within its review of the agency’s decision and not in a separate proceeding. 
Dubin v. Personnel Board
, 128 Ill. 2d 490, 498-99 (1989); see 
Midland Hotel Corp. v. Director of Employment Security
, 282 Ill. App. 3d 312, 316-17 (1996).

This aspect of the exhaustion doctrine is well established. However, it has several exceptions that are equally established. Two such exceptions are “where no issues of fact are presented or agency experience is not involved *** or where the agency’s jurisdiction is attacked because it is not authorized by statute.” 
Castaneda
, 132 Ill. 2d at 309. This court has held that where an administrative assertion of authority to hear or determine certain matters is challenged on its face as not authorized by the enabling legislation, such a facial attack does not implicate the exhaustion doctrine and exhaustion is not required. This court has explained that where an agency’s statutory authority to exercise jurisdiction is at issue, no questions of fact are involved. The agency’s particular expertise is not implicated in the necessary statutory interpretation. 
Board of Governors of State Colleges & Universities for Chicago State University v. Illinois Fair Employment Practices Comm’n
, 78 Ill. 2d 143, 147-48 (1979), quoting 
Landfill, Inc. v. Pollution Control Board
, 74 Ill. 2d 541, 550-51 (1978); accord 
Reiter v. Neilis
, 125 Ill. App. 3d 774, 777-78 (1984) (“plaintiffs did not have to comply with the Administrative Review Act in order to challenge the subject matter jurisdiction of the zoning board of appeals”). In the present case, the appellate court relied on this exception to conclude that the circuit court could hear the Highlands’ claim for equitable relief. 302 Ill. App. 3d at 344-45.

The county and Leonard contend that these exceptions to the exhaustion doctrine do not apply. They rely heavily on the reasoning of the appellate court dissent. The dissent opined that the board had the authority to determine whether the Highlands’ buildings were subject to permit requirements. The dissent noted that “jurisdiction” is a limited concept, which refers only to the authority to hear and decide the case and does not depend on the correctness of the decision made. Thus, a body has “jurisdiction” to make a wrong as well as a right decision. Accordingly, the dissent reasoned:

“While the Code prohibits the county from requiring permits on land used for agricultural purposes, it is the county that must determine for what purpose land is being used. Its jurisdiction does not depend on the correctness of its decision. It has the right to be wrong; it therefore has jurisdiction over the matter.” 302 Ill. App. 3d at 349 (McLaren, J., dissenting).

We disagree. It must be remembered that the “jurisdiction” of an administrative agency has an aspect in addition to the “jurisdiction” of a court. This court has explained:

“An administrative agency is different from a court because an agency only has the authorization given to it by the legislature through the statutes. Consequently, to the extent an agency acts outside its statutory authority, it acts without jurisdiction. [Citation.] ‘The term “jurisdiction,” while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act ***.’ [Citation.] Thus, in administrative law, the term ‘jurisdiction’ has three aspects: (1) personal jurisdiction–the agency’s authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction–the agency’s power ‘to hear and determine cases of the general class of cases to which the particular case belongs’ [citation], and (3) an agency’s scope of authority under the statutes.” 
Business & Professional People for the Public Interest v. Illinois Commerce Comm’n
, 136 Ill. 2d 192, 243 (1989).

Thus, it is not entirely accurate to characterize the appellate court as having held that the board “has no jurisdiction over zoning.” 302 Ill. App. 3d at 349 (McLaren, J., dissenting). Rather, it is more accurate to state that the board has no jurisdiction over zoning where the board’s enabling legislation expressly denies the board zoning authority over land used for agricultural purposes. See 55 ILCS 5/12001 (West 1998).

The dissent viewed the Highlands as not attacking the board’s jurisdiction, but rather as attacking the correctness of “the Board’s decision that the use of the land was not exempt from permit requirements. This is an attack on the correctness of the Board’s decision, which should only be attacked through administrative review.” 302 Ill. App. 3d at 349 (McLaren, J., dissenting).

We disagree. The transcript of the board hearing shows that the Highlands attacked the jurisdiction of the board. Also, count I of the Highlands’ complaint expressly attacks the county’s zoning authority in this case. Quoting the Counties Code, count I expressly alleges that the statute does not authorize the board to regulate land used for agricultural purposes. Further, on this theory, 
inter alia
, the Highlands based its motion for summary judgment.

“This court has consistently held that, inasmuch as an administrative agency is a creature of statute, any power or authority claimed by it must find its source within the provisions of the statute by which it is created.” 
Bio-Medical Laboratories, Inc. v. Trainor
, 68 Ill. 2d 540, 551 (1977). The issue of an administrative body’s authority presents a question of law and not a question of fact. The determination of the scope of the agency’s power and authority is a judicial function and is not a question to be finally determined by the agency itself. 
Lake County State’s Attorney v. Illinois Human Rights Comm’n
, 200 Ill. App. 3d 151, 156 (1990) (and cases cited therein); accord 
Rockford Memorial Hospital v. Department of Human Rights
, 272 Ill. App. 3d 751, 759 (1995). Of course, administrative agencies often determine the scope of their jurisdiction. When an agency acts or refuses to act in a case, it necessarily determines whether the subject matter and its activity are or are not within the purview of the statute creating the agency. Again, however, “this is a question of law and not of fact.” 
People ex rel. Thompson v. Property Tax Appeal Board
, 22 Ill. App. 3d 316, 321 (1974); accord 2 Am. Jur. 2d 
Administrative Law
 §77 (1994); 73 C.J.S. 
Public Administrative Law & Procedure
 §64 (1983).

In its claim for injunctive relief, the Highlands attacked the Board’s jurisdiction. This is a question of law ultimately for a court and not for the Board. Thus, the Highlands’ claim fell within established exceptions to the exhaustion doctrine. Accordingly, the appellate court correctly upheld the circuit court’s power to hear the Highlands’ claim for injunctive relief.

II. “Agriculture”

Turning to the merits, the county and Leonard assign error to the circuit court’s finding that the Highlands was engaged in an agricultural purpose, which is exempt from zoning regulations pursuant to the Counties Code. Section 5–12001 of the Code grants counties authority to regulate and restrict the use of land and the use and location of structures thereon. However, the Code expressly limits this authority in pertinent part:

“The powers by this Division given shall not be exercised *** so as to impose regulations *** or require permits with respect to land used for agricultural purposes, which includes the growing of farm crops, truck garden crops, animal and poultry husbandry, apiculture, aquaculture, dairying, floriculture, horticulture, nurseries, tree farms, sod farms, pasturage, viticulture, and wholesale greenhouses *** other than parcels of land consisting of less than 5 acres *** or with respect to the erection, maintenance, repair, alteration, remodeling or extension of buildings or structures used or to be used for agricultural purposes upon such land except that such buildings or structures for agricultural purposes may be required to conform to building or set back lines ***.” 55 ILCS 5/5–12001 (West 1998).

The fundamental rule of statutory interpretation is to give effect to the intention of the legislature. A court first looks to the words of the statute. The language of the statute is the best indication of the legislative intent. When the statutory language is clear, it must be given effect without resort to other tools of interpretation. In interpreting a statute, it is never proper for a court to depart from plain language by reading into a statute exceptions, limitations, or conditions which conflict with the clearly expressed legislative intent. 
Nottage v. Jeka
, 172 Ill. 2d 386, 392 (1996); 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 479 (1994).

In the present case, we agree with the appellate and circuit courts that a hog confinement facility falls within the “agricultural purposes” exemption from zoning regulation, except for conforming to building or set back lines. 55 ILCS 5/5–12001 (West 1998). “Agriculture” literally refers to “the science or art of cultivating the soil, harvesting crops, and raising livestock.” Webster’s Third New International Dictionary 44 (1993); accord Black’s Law Dictionary 69 (7th ed. 1999); 3 Am. Jur. 2d 
Agriculture
 §1, at 934-35 (1986). “Husbandry” is literally a synonym for “agriculture.” Webster’s Third New International Dictionary 44, 1104 (1993) (definitions of “agriculture” and “husbandry,” respectively); accord 3 C.J.S. 
Agriculture
 §2, at 524-25 (1973). “Animal husbandry” is literally “a branch of agriculture concerned with the production and care of domestic animals.” Webster’s Third New International Dictionary 85 (1993); accord 3 C.J.S. 
Agriculture
 §2, at 525 (1973).

The literal meanings of these terms are broad and inclusive. We are not at liberty to say that they mean something else. Also, as the above definitions show, the meanings of these terms are 
current
. They are not based on some archaic court decision, or on any particular case, old or recent. “In modern usage, agriculture is a wide and comprehensive term, and statutes using it without qualification must be given an equally comprehensive meaning.” 3 C.J.S. 
Agriculture
 §2, at 524 (1973). Illinois courts have recognized this wide-ranging definition of the term “agriculture.” 
E.g.
, 
People ex rel. Pletcher v. City of Joliet
, 321 Ill. 385, 388-89 (1926); 
County of Lake v. Cushman
, 40 Ill. App. 3d 1045, 1048 (1976).

Based on the broad nature of the foregoing definitions, it is clear that hog facilities fall within the meaning of agriculture or animal husbandry. Courts in other jurisdictions have so held and further held that local governments should treat them accordingly for purposes of zoning. See 
Carp v. Board of County Commissioners
, 190 Kan. 177, 373 P.2d 153 (1962); 
Building Inspector v. Curvin
, 22 Mass. App. Ct. 401, 494 N.E.2d 42 (1986). In this state, the Illinois Attorney General has reached the same conclusion. See 1978 Ill. Att’y Gen. Op. 146 (A county does not have the power to regulate a hog confinement structure under the Counties Code as the Code prohibits regulation by zoning of agricultural uses, other than to set building or set back lines).

In plain and unambiguous terms, the legislature has prohibited zoning regulation of agricultural uses, such as animal husbandry, other than to conform to building or set back lines.

“Where the words employed in a legislative enactment are free from ambiguity or doubt, they must be given effect by the courts even though the consequences may be harsh, unjust, absurd or unwise. [Citations.] Such consequences can be avoided only by a change of the law, not by judicial construction ***.” 
People ex rel. Pauling v. Misevic
, 32 Ill. 2d 11, 15 (1964).

Accord 
Powers v. Retirement Board of the Policemen’s Annuity & Benefit Fund
, 249 Ill. App. 3d 280, 282 (1993). It is our duty to give effect to the intent of the legislature as expressed in the plain language of the Counties Code.

The appellate court reached this conclusion, as we have, based on the language of the Counties Code. 302 Ill. App. 3d at 345-46. We note that the appellate court additionally referred to the Livestock Management Facilities Act (510 ILCS 77/1 
et seq
. (West 1998) (effective May 21, 1996)) to bolster its conclusion that a county lacks the power to assert zoning authority over land used for agricultural purposes. Pointing to this act, the appellate court surmised that “the legislature appears to have continued to preempt agriculture from local zoning and reserved unto state government the uniform regulation of such facilities.” 302 Ill. App. 3d at 348. However, we express no opinion as to this act. Since the language of Counties Code section 5–12001 (55 ILCS 5/5–12001 (West 1998)) is plain and unambiguous, we do not resort to other tools of interpretation (see 
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 216 (1994)), including looking to other statutes (see 
Kozak v. Retirement Board of the Firemen’s Annuity & Benefit Fund
, 95 Ill. 2d 211, 219-20 (1983)).

Citing a wide variety of sources, including journal and newspaper articles, and government and industry reports, the county and Leonard contend that a large-scale hog confinement facility is more closely related to industry rather than agriculture. Leonard argues that “the livestock production industry and its potential for affecting the public health, safety, comfort and general welfare of its environs has changed completely since [the enactment of the county zoning statute].” According to the county, “as a matter of public policy, the potential environmental stress created by such an operation warrants a 21st century clarification of what agriculture is in this State.” Attacking the appellate and circuit courts in upholding the broad definition of agriculture, the county contends: “Such a myopic view wrongfully ends any debate upon the true nature of the given enterprise.”

We disagree. The holding of the appellate court shifts this debate from the judiciary to where it properly lies–with the legislature. It is for the legislative branch of the government–not the judicial branch–to determine when and where conditions exist requiring an exercise of the police power to meet existing evils. 11 Ill. L. & Prac. 
Constitutional Law
 §149, at 498 (1981). Clearly, “the legislature has broad discretion to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest.” 
Chicago National League Ball Club, Inc. v. Thompson
, 108 Ill. 2d 357, 364 (1985).

“No mere omission or failure on the part of the legislature to amend [in this case, the Counties Code] to meet changing conditions will justify any judicial addition to the language of the [Code]. Changes can be made by the legislature when it deems such changes necessary or proper in view of changed conditions.” 
Arnold v. City of Chicago
, 387 Ill. 532, 541 (1944).

At what level of activity does a hog production facility cease to be “agricultural” and becomes “industrial”? This is an exercise in line-drawing classically meant for the legislature.

We note that the legislature knows how to limit the agricultural exemption from zoning regulation by specifying what “agricultural purposes” do 
not
 include. See 
County of Kendall v. Aurora National Bank Trust No. 1107
, 219 Ill. App. 3d 841, 845 (1991) (explaining Public Act 85–1421, art. I, §3, eff. December 15, 1988, which excluded certain mining activities from “agricultural purposes”).

CONCLUSION

We uphold the determination of the appellate and circuit courts that the county may assert zoning authority over the Highlands only so far as to require it “to conform to building or set back lines.” 55 ILCS 5/5–12001 (West 1998). This holding obviates discussion of the legal effect of the Board’s vote to rescind the construction permit, as to which the parties disagree.

For the foregoing reasons, the judgment of the appellate court is affirmed.

Affirmed
.