2026 IL App (1st) 251061

No. 1-25-1061

Opinion filed May 27, 2026

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DESHAWN TUCKER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF HEALTHCARE AND | ) | |
| FAMILY SERVICES; ELIZABETH M. WHITEHORN, | ) | |
| in Her Official Capacity as Director of Healthcare and | ) | No. 24 CH 6010 |
| Family Services; and SHENICKA BELL, | ) | |
| | ) | |
| Respondents | ) | |
| | ) | |
| (The Department of Healthcare and Family Services, and | ) | |
| Elizabeth M. Whitehorn, | ) | |
| | ) | Honorable |
| Respondents-Appellees). | ) | Caroline Kate Moreland, |
| | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Presiding Justice Martin specially concurred, with opinion.

**OPINION**

¶ 1    In 2007, respondent the Department of Healthcare and Family Services (Department) entered default administrative paternity and child support orders against petitioner DeShawn Tucker, who failed to appear for an interview to address allegations that he was the father of a child born to respondent Shenicka Bell and was required to pay child support. In 2015, based on Tucker's request and submissions, the Department entered a modified child support order requiring him to pay $0 going forward.

¶ 2    In 2023, Tucker filed with the Department an administrative appeal of the 2007 default paternity and support orders, contending that the Department failed in 2007 to properly serve notice of the proceedings on him at his usual place of abode and so should vacate those default orders as void.

¶ 3    The Department determined that it lacked jurisdiction to hear Tucker's administrative appeal because it was not filed within the two-year limitations period under which the Department could vacate its prior orders. The Department also determined that no period of time could be excluded in computing the two-year limitations period because there was no period during which Tucker was under a legal disability or duress or during which the grounds for relief were concealed from him. Tucker pursued administrative review of the Department's decision in the circuit court, which upheld the Department's decision.

¶ 4    On appeal, Tucker argues that (1) the Department's finding of proper substitute service on him of notice of the administrative hearing on the issues of paternity and support was against the manifest weight of the evidence, (2) the 2007 default orders are void because the Department lacked personal jurisdiction over him when those orders were entered, (3) the Department had

jurisdiction in 2023 to declare its 2007 default orders void, and (4) the circuit court erred by not declaring the 2007 default orders void.

¶ 5    For the reasons that follow, we affirm the judgment of the circuit court that upheld the Department's final administrative decision.[1]

¶ 6                                              I. BACKGROUND

¶ 7    In late 2006, the Department's division of child support services, acting on behalf of Bell, initiated an administrative action to determine whether Tucker was the father of a child born to Bell and, if so, to establish Tucker's child support obligation. On January 26, 2007, Tucker was served with notice of the proceeding to establish paternity and child support (Notice) by substitute service, sometimes referred to as abode service, which involves leaving documents with a family member at the person's usual place of abode. See 89 Ill. Adm. Code 160.60(a)(2) (2020). The Notice advised Tucker that Bell had identified him as the father of her child an interview was scheduled for February 9, 2007, to determine paternity and potentially address child support, and, if Tucker failed to appear, he could be declared the child's father by default and ordered to pay child support.

¶ 8    An affidavit from the special process server attested that the Notice was served on January 26, 2007, at 5408 West Augusta Boulevard in Chicago (Augusta address). Specifically, the affidavit states: "I served this summon/notice of support and xxxxxxx on the [noncustodial parent]/Defendant [by] Substitute Service." The affidavit also set forth that the recipient—a Black

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

female about 45 years old—refused to identify herself. Further, the Notice also was mailed to Tucker at the Augusta address.

¶ 9     Tucker did not appear at the February 9, 2007, interview. Therefore, on February 23, 2007, the Department entered default administrative paternity and child support orders against him (collectively, the 2007 orders). The paternity order advised that, because paternity was established by default, Tucker could have the order vacated if he appeared within 30 days of service to petition for release and could receive a hearing. The support order required Tucker to pay $223.60 per month for ongoing child support in addition to certain other payments.

¶ 10    On March 21, 2007, Tucker was served by substitute service with a copy of the paternity order. The server's affidavit attested that a copy of the order was left at the Augusta address and that the recipient was a 43-year-old Black female named Kim Bonds, who was Tucker's mother. A copy of the paternity order also was mailed to Tucker at the Augusta address.

¶ 11    In 2014, Tucker, seeking to modify the child support, submitted to the Department affidavits of his income and expenses, stating that he was incarcerated and had no income. In February 2015, based on the information from Tucker, the Department entered a modified child support order requiring him to pay $0 going forward.

¶ 12    In May 2023—16 years after the issuance of the 2007 orders—Tucker filed with the Department a request for an administrative appeal challenging those orders. He claimed that he did not reside at the Augusta address when the Notice was served. Rather, he alleged, he resided at 1158 North Lockwood Avenue in Chicago (Lockwood address) with his grandfather. According to Tucker, because the Notice was not served at his usual place of abode, the subsequent 2007 orders were void *ab initio* for lack of personal jurisdiction over him at the time of their entry and

should be vacated. Tucker also asserted that he could challenge the void 2007 orders at any time. Tucker submitted with his appeal request an affidavit stating that, in January 2007, he lived at the Lockwood address. He also submitted criminal case summaries, which reflected that he was arrested on December 5, 2006, and April 19, 2007. The summaries also listed, under the heading "Party Information," Tucker as the defendant and the Lockwood address.

¶ 13    In November 2023, a Department administrative law judge (ALJ) held a hearing on Tucker's appeal request. The ALJ heard testimony from Tucker, Bell, and a Department representative. Documentary evidence included Tucker's affidavit and the criminal case summaries. The Department's submissions included the process servers' affidavits for the Notice and paternity order, the Notice, the 2007 orders, documents relating to the mortgage on the Lockwood address, Tucker's 2014 requests to modify the support order, and the 2015 support order reducing Tucker's child support.

¶ 14    At the hearing, Tucker testified that he never lived at the Augusta address. Instead, he lived with his grandfather at the Lockwood address until he was incarcerated sometime in early 2007. Tucker testified that he never received the Notice and did not know about the February 9, 2007, hearing.

¶ 15    Bell testified that she had a relationship with Tucker for five years, from May 2005 to July 2010. She lived with him at the Lockwood address with his grandfather and grandmother while Tucker was on house arrest from September to the end of December 2005. She and Tucker had lived at the Lockwood address until his grandparents divorced and his grandmother was awarded that home and sold it in February 2006. Then, Bell and Tucker moved into the home at the Augusta address with his mother and her husband. Bell and Tucker lived at the Augusta address from

February 2006 through April 2007, when Tucker was arrested and went to prison. Tucker was released from prison in June 2008. Bell also testified that Tucker knew about the 2007 orders because he was brought from prison to attend a hearing held in 2007 to determine his child support. Bell believed that, although Tucker's mother did not identify herself when the Notice was served, she did identify herself when the paternity order was served two months later because she was mad at Tucker for beating Bell.

¶ 16    The Department issued a final administrative decision that dismissed Tucker's appeal for "[w]ant of [j]urisdiction." The decision included the ALJ's findings of fact, a discussion of the evidence, and the Department's director's analysis. The ALJ found, *inter alia*, that Tucker lived at the Augusta address—where his mother also lived—from 2006 through April 2007 and that both the Notice and the default paternity order were served at that address—in January 2007 and March 2007, respectively—upon Tucker's mother. Accordingly, the director found that, based on the findings of fact and the "credible testimony and documentation" provided by the Department, "substitute notice of process was completed in 2007."

¶ 17    Under the relevant Department regulations, the director observed, an administrative appeal contesting an administrative support order must be brought within two years of the order's entry. See *id.* § 160.60(g). Moreover, the start of the two-year period may be tolled only when the person seeking relief was under legal disability or duress or when the grounds for relief were concealed from that person. *Id.* Because Tucker appealed 16 years after entry of the 2007 orders and did not show that he met any of the tolling criteria, his appeal was untimely. The director also stated that Tucker had to have known of the 2007 orders no later than February 2015, when the Department granted his request to reduce his child support to $0. So, even applying the two-year limitations

period to that later date, the director determined that Tucker's May 2023 administrative appeal was untimely and the Department lacked jurisdiction to review it.

¶ 18    Tucker filed a complaint for review of the Department's final administrative decision in the circuit court, arguing that his administrative appeal was timely. He contended that the Department's factual finding that the Notice was properly served by substitute service in January 2007 was against the manifest weight of the evidence. He asserted that, because the service was defective, the 2007 orders were void for lack of personal jurisdiction and, therefore, could be challenged at any time. In response, the Department argued that the evidence supported the finding of proper service of the Notice on Tucker in 2007, his manifest-weight challenge was thus meritless, the 2007 orders were not void, and the two-year deadline applied and he failed to meet it.

¶ 19    In May 2025, the circuit court entered an order upholding the Department's final administrative decision. Tucker timely appealed the judgment of the circuit court.

¶ 20                              II. ANALYSIS

¶ 21                    A. Agency's Authority to Vacate Alleged Void Orders

¶ 22    Tucker argues that the Department has jurisdiction to declare its own orders void. According to Tucker, the two-year limitations period to bring an administrative appeal contesting paternity and support orders applies to appeals requiring a meritorious defense and is not applicable here because his allegation—that the 2007 orders are void due to defective service and thus may be vacated at any time—substitutes for and negates the need to allege a meritorious defense and due diligence. Tucker cites *Schak v. Blom*, 334 Ill. App. 3d 129 (2002), for the proposition that "[a] void order is a complete nullity from its inception and has no legal effect and

may be attacked, either directly or collaterally, at any time or in any court." *Id.* at 134. Tucker also cites section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2024)), which provides for "[r]elief from final orders and judgments, after 30 days from the entry thereof," and states that

"[a]ll relief *** shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. Except as provided in the Illinois Parentage Act of 2015, there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief, or the relief obtainable." *Id.* § 2-1401(a).

¶ 23    The Department responds that it only has the jurisdiction accorded by statute, which does not include vacating allegedly void orders outside the statutorily mandated two-year limitations period.

¶ 24    When we review an administrative proceeding, we review the administrative agency's decision, not the trial court's decision. *Matlock v. Illinois Department of Employment Security*, 2019 IL App (1st) 180645, ¶ 18. The scope of an administrative agency's authority to act presents a question of law (*County of Knox ex rel. Masterson v. The Highlands, L.L.C.*, 188 Ill. 2d 546, 554 (1999)), which is reviewed *de novo* (*Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 553 (2005)).

¶ 25    Courts have a duty to vacate and expunge void orders from court records and thus may *sua sponte* declare an order void. *Siddens v. Industrial Comm'n*, 304 Ill. App. 3d 506, 511 (1999). A judgment or order is void where it is entered by a court or agency that lacks personal jurisdiction, subject-matter jurisdiction, or the inherent power to enter the particular judgment or order, or where the order is procured by fraud. *Id.* at 511-12 (where the reviewing court entered a final

judgment, the agency did not have statutory power to review the merits of the appeal in the underlying case to determine if that appeal was frivolous or made for the purpose of delay). An order is also void where the court exceeded its authority. *Wilder v. Finnegan*, 267 Ill. App. 3d 422, 425 (1994).

¶ 26    As an administrative agency, the Department has only the authorization given to it by the legislature through the Illinois Public Aid Code (Code) (305 ILCS 5/1-1 *et seq.* (West 2024)), so the Department's jurisdiction is different from that of a court. See *County of Knox*, 188 Ill. 2d at 553. Although the term "jurisdiction" does not strictly apply to administrative agencies, courts employ the term to designate an agency's authority to act under its enabling statute (in addition to designating an agency's authority over the parties and the subject matter). *Id.* Therefore, "to the extent an agency acts outside its statutory authority, it acts without jurisdiction." (Internal quotation marks omitted.) *Id.*

¶ 27    Under section 10-3.1 of the Code (305 ILCS 5/10-3.1 (West 2024)), the Department exercises the "support enforcement powers and responsibilities" assigned by statute. As part of its role, the Department may establish paternity and child support through administrative proceedings and enter corresponding orders. *Id.* § 10-11; see, *e.g.*, *id.* § 10-6 (Department investigates and determines support obligation); *id.* § 10-17.7 (Department makes administrative determinations of paternity); 89 Ill. Adm. Code 160.60(e)(1) (2020) (describing administrative process).

¶ 28    When the Department enters administrative paternity or support orders, the Code specifies how an affected person may obtain relief. A person "duly notified" of such an order may seek to have it modified or vacated within 30 days of its entry. 305 ILCS 5/10-12(a) (West 2024). The subject of a paternity order entered by default may seek to have it vacated within 30 days of being

served with the order. *Id.* § 10-12(b). Beyond this 30-day window, a person "aggrieved" by an administrative paternity or support order may petition for relief only in limited circumstances. *Id.* § 10-14.1. The reasons for relief must be the "same grounds as are provided for relief from judgments under Section 2-1401 of the Code of Civil Procedure." *Id.* Additionally, the petition "must be filed not later than 2 years after the entry of the [Department's] order." *Id.* And, in computing the two-year period, "[a]ny period during which the person seeking relief is under a legal disability or duress or during which the grounds for relief are fraudulently concealed shall be excluded." *Id.* When the Department "receiv[es] a petition within the 2-year period, [it] shall provide for a hearing to be held on the petition." *Id.*

¶ 29   The Department has enacted regulations that implement its statutory authority. Like the Code, when more than 30 days have passed from an order's entry, the regulations permit relief only on the "same grounds" as under section 2-1401 of Code of Civil Procedure. 89 Ill. Adm. Code 160.60(g)(1) (2020). The regulations require a "meritorious defense" and "the exercise of due diligence." *Id.* § 160.60(g)(2)(A), (B) (support orders); *id.* § 160.61(e)(2)(A), (B) (paternity orders). Further, relief must be sought "no later than two years following the entry" of the order, excluding only periods of disability, duress, or concealment of the grounds for relief. *Id.* § 160.60(g)(2)(C) (support orders); *id.* § 160.61(e)(2)(C) (paternity orders).

¶ 30   According to its statutory authority, the Department correctly determined that it has no power to vacate a paternity or support order more than two years after its entry, absent disability, duress, or concealment. Although a court may vacate a void order at any time (*BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17), an administrative agency is not a court and lacks a court's "general or common law powers" (*Alvarado*, 216 Ill. 2d at 553). Thus, regardless of

whether the 2007 orders were void, the Department lacks jurisdiction to vacate them outside the statutory framework specified by the legislature.

¶ 31 Tucker cites no caselaw that supports his contrary position. Primarily, he relies on *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95 (2002), and *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2014 IL App (1st) 123654, *aff'd*, 2017 IL 117720. Neither case, however, held that an administrative agency may vacate an order that it entered—even a purportedly void order—outside the period in which the legislature authorized the agency to act.

¶ 32 In *Sarkissian*, 201 Ill. 2d at 97-98, the parents of an injured child brought a tort action against a municipal board of education, obtaining a $10 million default judgment. Several years later, the board filed a motion to vacate the judgment as void based on allegedly defective service of process, which the circuit court granted. *Id.* at 98-99. The Illinois Supreme Court determined that the board's motion should be deemed a section 2-1401 petition. *Id.* at 101-05. And, under section 2-1401(f), the motion was not subject to the requirements for other types of section 2-1401 petitions (such as a meritorious defense or a two-year time limit). *Id.* at 104.[2]

¶ 33 *Sarkissian* did not involve or discuss administrative proceedings and does not aid Tucker. Rather, *Sarkissian* addressed whether a motion to vacate a default judgment as void due to defective service of process was a section 2-1401 petition and thus made the circuit court's decision to grant that motion a final appealable order reviewable under Illinois Supreme Court Rule 304(b)(3) (eff. Feb. 1, 1994). *Sarkissian*, 201 Ill. 2d at 101-03. *Sarkissian* noted that section

---

[2]Section 2-1401(f) reads: "Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(f) (West 2024).

2-1401 is the only provision the legislature made in the Code of Civil Procedure "for the filing of a motion to challenge a judgment on voidness grounds" and clarified that petitions in the circuit court seeking to vacate void court judgments are properly recognized as section 2-1401 petitions. *Id.* at 105.

¶ 34    Here, even though the Department could consider a petition for relief based on voidness as a petition "on the same grounds as are provided for relief from judgments under Section 2-1401 of the Code of Civil Procedure," the governing section of the Code expressly specifies further requirements—including that the "petition must be filed not later than 2 years after the entry of the order or determination by the Illinois Department." 305 ILCS 5/10-14.1 (West 2024). As an administrative agency, the Department can act only within the scope of authority conferred by the legislature, and a court may not expand that statutory authority. See *Alvarado*, 216 Ill. 2d at 553 (agency's "powers are limited to those granted by the legislature, so that any action taken by the [agency] must be specifically authorized by statute"); *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 530 (2001) (administrative agency is a "statutory creature" that draws its power from the legislature).

¶ 35    Finally, Tucker cites *Stone Street Partners*, 2014 IL App (1st) 123654, ¶¶ 3-5, where the agency failed to properly serve the corporation's registered agent with notice of the administrative hearing and the agency issued a final administrative judgment in 1999 against the corporation after an unauthorized person appeared at the hearing purportedly on the corporation's behalf. In 2011, the corporation filed a motion with the agency to vacate and set aside the order as void due to improper service of notice, but the agency found that it lacked jurisdiction to vacate the order because the agency's governing "ordinances provided no mechanism for un-served defendants to

vacate void orders." *Id.* ¶¶ 5, 22. The corporation then filed a complaint in the circuit court, seeking, *inter alia*, administrative review of the agency's 2011 order and a declaratory judgment that the agency's 1999 judgment was void for lack of proper service of the notice of the administrative hearing. *Id.* ¶¶ 5-6.

¶ 36     This court ruled that the circuit court correctly dismissed the plaintiff's administrative review claim because the agency lacked jurisdiction to vacate the 1999 order since it was not a default order and the governing ordinance did not provide for vacating orders in the circumstances presented. *Id.* ¶ 25. However, this court ruled that the circuit court erred in dismissing the plaintiff's declaratory relief claim, under which the court could consider the validity of the 1999 order, because "some sort of equitable relief must be available to remedy the alleged wrong suffered by [the corporation]." *Id.* ¶¶ 26, 28.

¶ 37     *Stone Street Partners* does not support Tucker's arguments. Like the administrative agency in *Stone Street Partners*, the Department here properly determined that it lacked jurisdiction to vacate its orders except as provided in its governing statute, which limited the agency's power to vacate its orders to a two-year limitations period.

¶ 38                              B. Concealment of the Grounds for Relief

¶ 39     Tucker did not allege in his appeal to the Department that he was legally disabled or under duress during the 16-year delay from the time when the 2007 orders were issued in February 2007 to when he finally filed his administrative appeal in May 2023. The Department properly interpreted Tucker's allegations that he was not properly served with notice of the 2007 proceedings as his allegations that the grounds for relief were concealed from him during that 16-year delay. Accordingly, for the Department to have jurisdiction to hear Tucker's 2023 appeal, he

had to show that the grounds for relief from the 2007 orders were concealed from him until, at the earliest, May 2021. See 89 Ill. Adm. Code 160.60(g)(2)(C), 160.61(e)(2)(C) (2020). In other words, Tucker had to show that he neither knew nor should have known of the 2007 orders until less than two years before he filed his appeal.

¶ 40    Tucker argues that service of the Notice was defective because it was not served at his usual place of abode. He also argues that the Department's finding to the contrary is against the manifest weight of the evidence.

¶ 41    Under manifest weight review, an agency's factual findings are deemed *prima facie* true and correct. 735 ILCS 5/3-110 (West 2024); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). Courts do not "weigh the evidence or substitute [their] judgment for that of the agency." *Cinkus*, 228 Ill. 2d at 210; accord *Cannici v. Department of Employment Security Board of Review*, 2021 IL App (1st) 181562, ¶ 42. Rather, a finding is not against the manifest weight unless the opposite conclusion is "clearly evident." *Cinkus*, 228 Ill. 2d at 210; *Cannici*, 2021 IL App (1st) 181562, ¶ 42. And "the opposite conclusion is not clearly evident as long as there is some evidence of record to support the finding." *Cannici*, 2021 IL App (1st) 181562, ¶ 42.

¶ 42    Tucker does not satisfy this highly deferential standard of review. Tucker testified that he did not reside at the Augusta address (*i.e.*, the service address) when the Notice was served in January 2007 but, rather, resided at the Lockwood address. But Bell—who was Tucker's then-girlfriend and familiar with the circumstances—testified that Tucker resided at the Augusta address when the Notice was served. Tucker's assertion that Bell's testimony was "conclusory" is

contradicted by the record. Bell's testimony established that she knew where Tucker resided in January 2007 because she was in a relationship with him from 2005 to 2010.

¶ 43 Tucker contends that the documentary evidence supports his testimony and thus renders the Department's decision against the manifest weight of the evidence. The criminal case summaries reflect Tucker's arrests in December 2006 and April 2007 and list under the heading "Party Information" the defendant Tucker and the Lockwood address. The Department argues that those summaries do not compel a finding in Tucker's favor because the summaries neither identified how the information recorded therein was derived nor directly addressed where Tucker lived in January 2007. The Department contends that the listing of the Lockwood address may have been retained from the location of Tucker's 2005 house arrest. The Department also argues that the mortgage release, which showed that Tucker's grandfather retained an interest in the Lockwood address through August 2006, did not show where Tucker lived in January 2007 or undermine Bell's testimony.

¶ 44 It is not the court's role to reweigh evidence or resolve conflicting evidence. *Alden Nursing Center-Morrow Inc. v. Lumpkin*, 259 Ill. App. 3d 1027, 1032 (1994). There is evidence in the record that supports the ALJ's finding that the Augusta address was Tucker's usual place of abode in January 2007. This finding is not against the manifest weight of the evidence because we cannot conclude that "no rational trier of fact could have agreed with the agency." See *id.*

¶ 45 Tucker's contention that he was served only with notice of his alleged support obligation, not his alleged paternity, lacks merit. The affidavit of the special process server for the Notice includes a typed line referring to service of "summon/notice of support and xxxxxx on" Tucker. But the Department properly found that this affidavit was accompanied by the "Notice of Alleged

Paternity and Support Obligation," which is the only notice in the record. This Notice was a form document prepared by the Department for the circumstances and set forth the interview date of February 9, 2007, which matches the information on the affidavit.

¶ 46    None of Tucker's contentions show that the Department's finding that he was properly served with the Notice was against the weight of the evidence. Because Tucker was properly served with notice of the 2007 proceeding, the Department did not err by concluding that he did not show that he had no knowledge of the 2007 orders. Thus, Tucker failed to show that any time should have been excluded from the 16-year delay he incurred before filing his appeal with the Department.

¶ 47    However, even assuming Tucker could have established that he had no knowledge of the 2007 orders, the Department also found that, at the latest, he would have been aware of the 2007 orders in February 2015, when the Department issued and served him with the modified support order. This modified support order was based on both of the 2007 orders, and Tucker participated in the proceedings that resulted in the modified support order. So, even assuming the 2007 orders had been concealed from Tucker until the February 2015 modified support order, the Department would have had the authority to hear an appeal from Tucker until February 2017, but not after. Consequently, the Department correctly concluded that it lacked the authority to hear Tucker's May 2023 appeal, even if the 2007 service of notice on him had been improper.

¶ 48    Because the Department's fact findings on the issue of service of notice on Tucker were not against the manifest weight of the evidence, we need not address Tucker's argument that the circuit court failed to exercise its authority to vacate the 2007 orders as void.

¶ 49                                III. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the judgment of the circuit court, which affirmed the final administrative decision of the Department.

¶ 51    Affirmed.

¶ 52    PRESIDING JUSTICE MARTIN, specially concurring:

¶ 53    I agree that the Department's decision and the circuit court's judgment should be affirmed. I write separately to acknowledge that due process must afford Tucker an opportunity to challenge the Department's orders as void.

¶ 54    Tucker argues his administrative appeal should be construed as a section 2-1401 (735 ILCS 5/2-1401 (West 2024)) petition since it was filed beyond the two-year limit to appeal the paternity and support orders and he sought to vacate them as void for lack of personal jurisdiction. See *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 715 (2010) ("[A]n untimely postjudgment motion must be viewed as a section 2-1401 motion."). Viewed as such a petition, he argues, it should have received the same treatment before the Department as a petition filed in circuit court, in accordance with *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95 (2002). That is, like a section 2-1401 petition brought on voidness grounds, he contends no time limitation barred the Department from determining the merits of his voidness challenge. *Id.* at 104 ("Petitions brought on voidness grounds need not be brought within the two-year time limitation.").

¶ 55    To be sure, "petitions seeking relief from void judgments are section 2-1401 petitions" (*id.* at 105), and the Illinois Public Aid Code allows for a petition "on the same grounds as are provided for relief from judgments under Section 2-1401." 305 ILCS 5/10-14.1 (West 2024). But the rule

that a void order "may be attacked at any time or in any court, either directly or collaterally" (emphasis and internal quotation marks omitted) (*R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 309 (1986)) derives from the inherent equitable power that courts alone possess and administrative agencies do not. See *Barnard v. Michael*, 392 Ill. 130, 136 (1945) ("[T]he court *** is exercising equitable jurisdiction and is governed by the same equitable principles and rules which control a court of equity in vacating a decree after the expiration of thirty days from its entry."); see also *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 113 (1976) ("Such agencies have no general or common law powers."). So, while voidness is a ground for relief under section 2-1401, the "any time, any court" rule cannot be invoked before an administrative agency to exceed its statutory authority. Because section 10-14.1 of the Public Aid Code (305 ILCS 5/10-14.1 (2024)) imposes a two-year limit and the Department is powerless to act beyond its statutory authority, the Department lacked jurisdiction to adjudicate Tucker's untimely petition. See *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 31 ("An administrative agency *** is a purely statutory creature and is powerless to act unless statutory authority exists.").

¶ 56    Nonetheless, we cannot ignore that an action taken without jurisdiction over the person affected results in a violation of his rights to due process. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 429 (1990). So, if the Department lacked authority to hear Tucker's voidness challenge, "some sort of equitable relief must be available to remedy the alleged wrong suffered." *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2014 IL App (1st) 123654, ¶ 28. For a litigant like Tucker—that is, a party seeking to attack an administrative order on voidness grounds when the agency lacks jurisdiction to hear it—this court has determined such a litigant could seek a declaratory judgment in the circuit court. *Id.* (finding

the circuit court erred in dismissing count to declare administrative judgment void for lack of jurisdiction). A declaratory judgment action would not be barred by the requirement to exhaust administrative remedies, as the agency was powerless to redress the grievance. See *Goral v. Dart*, 2020 IL 125085, ¶ 42 (finding an exception to the exhaustion requirement applies when the aggrieved party has no chance to succeed before the agency).

¶ 57 Apart from his arguments directed toward the Department, Tucker argues the circuit court—which does possess authority to vacate a void order at any time—should have vacated the paternity and support orders. But Tucker failed to seek a declaratory judgment. Instead, he filed a complaint solely requesting administrative review of the Department's decision. His complaint limited the scope of the matter before the circuit court. *Walker v. McGuire*, 2015 IL 117138, ¶ 39 ("The complaint frames the issues before the trial court."). Circuit courts exercise " 'special statutory jurisdiction' " when reviewing an administrative decision and may not exercise power beyond the language of the statute conferring such jurisdiction. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 178 (2007). Because Tucker's pleading failed to request declaratory relief, the circuit court had no authority to consider a voidness challenge independent of its review of the Department's decision.

¶ 58 Further, although courts have a duty to vacate void orders *sua sponte* (*Siddens v. Industrial Comm'n*, 304 Ill. App. 3d 506, 511 (1999)), that duty is not implicated unless voidness is established. It was not apparent on the record before the circuit court that the paternity and support orders were void. Instead, Tucker bore the burden to plead and prove that the Department did not obtain jurisdiction over him. As he failed to do so, the circuit court did not err in failing to vacate the orders.

¶ 59    I would affirm on these grounds alone.

*Tucker v. Department of Healthcare & Family Services*, 2026 IL App (1st) 251061

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-CH-6010; the Hon. Caroline Kate Moreland, Judge, presiding. |
| **Attorneys for Appellant:** | Ben J. Mahon, Khalfani J. Maatuka, Drew Curle, and Laura SB Vallejo, of Greater Chicago Legal Clinic, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellees. |